[No. 18007-7-III.   Division Three.   May 18, 2000.]

CLAUDIA DORSEY WILHELM, ET AL., *Respondents*, v. STEVEN R. BEYERSDORF, ET AL., *Appellants*.

[20]RCW 2.06.040.

*Paul J. Allison* and *Laurel H. Siddoway* of *Randall & Danskin, P.S.*, for appellants.

*Joseph P. Delay* of *Delay, Curran, Thompson, Pontarolo & Walker, P.S.*, for respondent Wilhelm.

*John M. Riley III* of *Witherspoon, Kelley, Davenport & Toole, P.S.*, for respondents Kordash.

SCHULTHEIS, J. — In granting partial summary judgment on an easement dispute, the trial court reformed the road

easement description to conform to the road's actual use. Steven and Sarah Beyersdorf, owners of the servient estate, appeal, contending the dominant estate owners are not entitled to reformation. They also argue that they were bona fide purchasers and that equity supports leaving the easement in its current configuration. One of the dominant estate owners, Claudia Dorsey Wilhelm, contends on cross-appeal that the trial court erred in denying her damages and in failing to require the Beyersdorfs to remove or lower a wellhead built on the easement. We affirm.

## FACTS

In May 1969, Ms. Wilhelm and her husband, Charles Dorsey, purchased 40 acres of land in Spokane County. Because their parcel was "landlocked," in 1970 they negotiated access to their property by way of an easement over land owned by J.K. and Virginia Featherman. The easement, drafted by the Feathermans, was reviewed by the Dorseys' attorney, who advised them that its description did not adequately fix the location of the easement. In relevant part, the easement states as follows:

> The easement and right-of-way hereby granted covers a strip of land 40 feet in width across the above described land, or 20 feet on each side of a center line, together with such additional widths as are necessary to provide for cuts, fills, turnouts, and for curves at the angle points, beginning at a point approximately 200 feet South of the Northeast corner of the hereinabove described grantors' parcel, and the road is to go Westerly, thence South; thence Westerly to foot or exit of gully; also existing road commencing from Northwest corner of grantors' property; thence southerly to exit of gully previously described; thence south across gully on west line of parcel being an existing road; thence South across gully, thence West and exit on West line of parcel. Configuration of topography plus existence of old logging road fixes the location of the easement herein.

The Dorseys decided not to pay for a survey and accepted the easement as written. Mr. Dorsey constructed a road

over the Featherman property, beginning at the northwest corner and expanding on a preexisting logging road. From 1970 on, the 16-foot-wide access road was used by the family on a regular basis. Mr. and Ms. Dorsey divorced in 1976 and Ms. Dorsey, now Ms. Wilhelm, was awarded the property.

Ms. Wilhelm recorded the Featherman easement in June 1977. About a week later, she sold 10 acres of her property to Terance and Lissette Kordash. At the same time, she granted an easement to the Kordashes, including a grant of her rights under the Featherman easement. The Kordashes have used the easement as an access to their property since 1977.

In August 1993 the Beyersdorfs purchased the parcel of land over which the Featherman easement runs. A title report provided to them before closing indicated that the land was subject to several easements, including the Dorseys' "permanent easement and right-of-way," described as affecting "[a] portion of the Southeast quarter of Section 12 being 40 feet in width which cannot be located by the instruments of record." The Beyersdorfs' real estate broker assured them there were no easements on their property.[1] When they visited the site, they saw what they described as an old logging road winding through dense woods, unimproved and apparently unused.

The Beyersdorfs began drilling a domestic well on the road surface of the easement in August 1995. At that time, Ms. Wilhelm had moved off her property and her adult daughter was living in the home. The daughter confronted the well driller in August 1995 because construction partially blocked the road. In response, the contractor, who had also begun construction of the Beyersdorfs' home nearby, moved the road west of the wellhead and poured gravel to repair it. Ms. Wilhelm's daughter did not contact the Beyersdorfs herself.

---

[1] A county assessor's map of the area does not show any roads other than those that had surveys on file. The Featherman easement had not been surveyed and consequently was not shown on the map.

Ms. Wilhelm filed suit in December 1995 seeking a declaratory judgment regarding the right to use the easement. She later added a claim of easement by prescription and requested damages for interference with the easement. She also sought reformation of the easement and an injunction for removal of the wellhead. In April 1996 she hired surveyor James Benthin to survey the existing road. His completed survey describes the location of the easement as pointed out by Ms. Wilhelm. According to his affidavit, "The description in the Featherman easement may or may not conform to the physical location of the road easement on the ground. The Featherman easement description was ambiguous."

In July 1996, Ms. Wilhelm moved for partial summary judgment reforming the Featherman easement to conform to the Benthin survey, or in the alternative, granting a prescriptive easement. Before the trial court ruled on the motion, the Kordashes filed a complaint against the Beyersdorfs and then joined in Ms. Wilhelm's motion for partial summary judgment and her complaint. The trial court granted the Wilhelm/Kordash motion for partial summary judgment on the claim of reformation only. After denial of the Beyersdorfs' motion for reconsideration, the trial court entered an order of partial summary judgment in January 1997 and a supplemental order (containing findings and conclusions) in March 1997.

The remaining claims for damages and for removal of the well were tried in November 1997. By memorandum opinion the trial court denied the claims for damages and held that the wellhead did not have to be removed as long as the Beyersdorfs are able to accommodate any future plans by the plaintiffs to expand or improve the easement to its full 40-foot width. The Beyersdorfs were permanently restrained from interference with the use or expansion of the easement.

### REFORMATION

The Beyersdorfs first contend there was no lawful

basis for the trial court to reform the description of the easement. They argue the Featherman easement description was inadequate to create an easement and could not be reformed on the basis of a scrivener's error or mutual mistake. In reviewing the partial summary judgment we engage in the same inquiry as the trial court. *Halbert v. Forney*, 88 Wn. App. 669, 673, 945 P.2d 1137 (1997). Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ Every conveyance of real estate and any interest or encumbrance on real estate must be by written deed, signed and acknowledged. RCW 64.04.010, .020; *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995). The statute of frauds requires that any conveyance of an interest in land, including an easement, must contain a description of the land sufficient to locate it without oral testimony (or it must refer to another instrument that does contain a sufficient description). *Id.* In the case of an easement, the document does not have to establish the easement's actual location. *Id.* Only the servient estate must be described in sufficient legal terms. *Id.* The original Featherman property, the servient estate here, is properly located by its exact legal description in terms of "lot and block and addition or plat[.]" *Id.* at 553 (quoting RCW 65.04.030(1)). Consequently, the Featherman easement effectively created a valid easement over the Featherman property as the servient estate for the benefit of the Dorsey property as the dominant estate.

The remaining questions are whether the Featherman easement applies to the portion of the original Featherman estate that was eventually sold to the Beyersdorfs, and whether the trial court properly reformed the easement to conform to the road used by Ms. Wilhelm and the Kordashes. The Beyersdorfs argue that the map of the Featherman property and the easement description indicate the road should run from 200 feet below the northeast corner of the Featherman property, then west, south and west

again. Because their parcel is centered on the west border of the Featherman property, far from the road that begins in the northeast corner, they contend the parties could not have intended the easement to run across their property.

Apparently the portion of the Featherman easement that describes a strip of land running from the northeast corner of the section does not conform to any current road that provides access to the Wilhelm or Kordash properties. The document actually appears to create two access points, however. Another portion of the easement describes an "existing road commencing from Northwest corner of grantors' property [traveling south across a gully and exiting] on west line of parcel[.]" This language comes closest to describing the current road used by the Kordashes and Ms. Wilhelm to access their properties. It is that section of the Featherman easement that the trial court reformed.

■ A trial court has equitable power to reform an instrument if there is clear, cogent and convincing evidence of a mutual mistake or a unilateral mistake coupled with inequitable conduct. *Kaufmann v. Woodard*, 24 Wn.2d 264, 270, 163 P.2d 606 (1945). Ms. Wilhelm did not argue unilateral mistake. Mutual mistake occurs if the intention of the parties is identical at the time of the transaction and the writing executed by them does not express that intention. *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 483, 368 P.2d 372 (1962); *Snyder v. Peterson*, 62 Wn. App. 522, 527, 814 P.2d 1204 (1991). The Feathermans and the Dorseys intended to provide access to the Dorsey property across the Featherman property. At least one of the easement routes indicated in their agreement, the one that followed an existing road, roughly corresponds with the route eventually used by the Dorseys. To the extent that the easement description—written, approved and executed by the parties—failed to express that intention clearly, reformation was justified to clarify that the established road constitutes the easement site.

■ Reformation was also justified on the basis of a scrivener's error. In the usual case, a deed containing an

inadequate legal description may be reformed where the deficiency is due to a mistake by the scrivener. *Saterlie v. Lineberry*, 92 Wn. App. 624, 628, 962 P.2d 863 (1998); *Halbert*, 88 Wn. App. at 673. The party seeking reformation has to show only that the parties agreed to accomplish a certain objective and that the instrument is insufficient to execute their intention. *Saterlie*, 92 Wn. App. at 628. The parties in *Saterlie* were aware before they executed their deed that there was a discrepancy between the easement shown on the short plat map (which complied with the ordinance requirements for the width of the easement) and the description of the easement in their deed. They researched the discrepancy at the auditor's office, but signed the closing agreement anyway. Finding it clear that the parties intended to complete the transaction in accordance with the ordinance requirements, *Saterlie* affirmed the trial court's reformation of the deed accordingly. *Id.*

In this case, the Dorseys learned from their attorney that the easement description was insufficient to specify the exact site of the easement. They chose to accept the description anyway. Of course, the lack of a legal description for the easement was not lethal. An easement's precise location is not required, only the exact location of the servient estate. *Berg*, 125 Wn.2d at 551. Because the servient estate was adequately described, the ambiguous language in the Featherman easement was not, strictly speaking, insufficient to execute their intention. Even so, the ambiguity of the easement did not sufficiently reflect the parties' intent. Considering the undisputed evidence that the Dorseys and the Feathermans intended to create an easement along an existing road, the trial court's reformation of the document to reflect this intention was proper.

Alternatively, the Beyersdorfs argue that there are unresolved issues of material fact regarding the width of the easement. As discussed above, the Featherman easement appears to establish two actual access roads: one, from the northeast corner of the Featherman property, that appears to end at an "exit of gully" on the Beyersdorf prop-

erty; and another, from the northwest corner of the Featherman (now Beyersdorf) property, that meets the first at the "exit of gully" and then runs to the west border of the Featherman property.

Creative use of commas and semicolons in the easement language arguably makes it unclear whether the entire easement should be 40 feet wide. The provision begins by stating that "[t]he easement and right-of-way hereby granted covers a strip of land 40 feet in width across the above described land, . . . beginning at a point approximately 200 feet South of the Northeast corner of the hereinabove described grantors' parcel[.]" More directions, some followed by commas and one after a semicolon, further describe this 40-foot wide easement. Then, after a semicolon, the paragraph describes the existing road: "also existing road commencing from Northwest corner of grantors' property; thence southerly to exit of gully . . .; thence South across gully, thence West and exit on West line of parcel." The Beyersdorfs contend the portion of the easement beginning at the northeast corner was intended to be 40 feet wide, but the northwest "existing road" portion was intended to remain the width of the existing road, approximately 16 feet.

Admittedly confusing, the document nevertheless agrees to convey only one easement, and that "easement and right-of-way" is described as a strip of land 40 feet in width. Both the northeast and the northwest access roads are described in the same sentence and apparently intersect before they run as one road to the Wilhelm and Kordash properties. Absent language to conflict with this interpretation, the trial court properly adopted the surveyor's conclusion that the portion of the easement actually used and maintained by Ms. Wilhelm and the Kordashes was intended to be 40 feet wide.

### BONA FIDE PURCHASERS

■■ The Beyersdorfs next contend Ms. Wilhelm and the Kordashes cannot assert their rights in the easement

because the Beyersdorfs were bona fide purchasers without notice of another's easement rights. A bona fide purchaser of land who has no actual or constructive knowledge of an easement generally takes title free of the burden of the easement. *Crescent Harbor Water Co. v. Lyseng*, 51 Wn. App. 337, 346, 753 P.2d 555 (1988); *see also Miebach v. Colasurdo*, 102 Wn.2d 170, 175-76, 685 P.2d 1074 (1984); *Kirk v. Tomulty*, 66 Wn. App. 231, 239, 831 P.2d 792 (1992). If the purchaser had knowledge of facts sufficient to excite inquiry, however, we presume the purchaser had constructive knowledge of all that the inquiry would have discovered. *Miebach*, 102 Wn.2d at 175-76. "Inquiry is not limited to searching record title." *Kirk*, 66 Wn. App. at 240. Recording the easement with the county auditor gives constructive notice to any successors in title. *Ellingsen v. Franklin County*, 117 Wn.2d 24, 30, 810 P.2d 910 (1991) (citing RCW 65.08.070); *Kirk*, 66 Wn. App. at 239-40.

The title report provided to the Beyersdorfs before the sale indicated the property was encumbered by an easement in favor of the Dorseys, recorded in June 1977 with an auditor's number of 7706100319. The fact that the easement was properly recorded gave constructive notice in itself. *Ellingsen*, 117 Wn.2d at 30. Additionally, the Beyersdorfs' personal investigation of the property revealed at least one established road that should have excited inquiry. All the above sufficiently establish actual or constructive notice of the Featherman easement. Accordingly, the Beyersdorfs were not bona fide purchasers entitled to take title free of the easement.

### BALANCING THE EQUITIES

Finally, the Beyersdorfs contend the trial court erred in refusing to balance the equities when it granted reformation of the easement. They argue the court did not consider the hardship imposed on them by the potential widening of the road next to their wellhead and their new house.

When courts decide to grant an equitable remedy,

they often balance the equities by taking into consideration the relief sought by the plaintiff and the hardship imposed on the defendant. *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 812, 818 P.2d 1362 (1991). Generally, however, the benefit of the doctrine of balancing the equities, or relative hardships, is reserved for the innocent defendant who proceeds without knowledge that he or she is encroaching on another's property rights. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 699-700, 974 P.2d 836 (1999); *Bach v. Sarich*, 74 Wn.2d 575, 582, 445 P.2d 648 (1968). Due to their actual and/or constructive knowledge that their property was encumbered by an easement on an existing road, the Beyersdorfs were not innocent defendants when they built a well on the established road's surface. The filed easement gave notice that it was 40 feet in width. Under these circumstances, the Beyersdorfs were not innocent defendants and consequently were not entitled to a balancing of the equities before the court granted the reformation. *Hollis*, 137 Wn.2d at 700.

REMEDIES

■ On cross-appeal, Ms. Wilhelm contends the trial court erred in failing to award damages for her demonstrated losses and in refusing to order removal or lowering of the wellhead. We review the trial court's findings to determine whether they are supported by substantial evidence and whether they support the conclusions of law. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465-66, 886 P.2d 556 (1994).

Ms. Wilhelm's husband testified that he expended $3,033 in repairing the road after the Beyersdorfs' contractor began construction. Most of the items on his billing ledger indicate monthly mud clearing, mostly by hand with a shovel. He testified at trial that he had been responsible for regular maintenance of the road even before the Beyersdorfs bought their parcel. The Beyersdorfs' contractor testified that the road was in poor condition when he began construction, especially in wet weather, and that he

repaired and regraveled it within days of damaging it with his trucks. The contractor also redug the ditches and had culverts put under the road to control water drainage. This evidence is sufficient to support the trial court's finding that Mr. Wilhelm's roadwork was little more than standard maintenance. It also supports the finding that the Beyersdorfs acted immediately to correct any road damage and to prevent injury to Ms. Wilhelm. These findings in turn support the conclusion that damages are not appropriate under the circumstances.

The evidence also supports the trial court's finding that the wellhead has not obstructed Ms. Wilhelm's use of the easement. Although she offered the testimony of a certified appraiser who indicated that the well location reduced the fair market value of her property, the court properly dismissed this evidence as irrelevant. The appraiser based his opinion on his estimate of what it would cost to remove or lower the wellhead. That cost has been assigned by judgment to the Beyersdorfs, however, in the event they have to change the wellhead to accommodate future development of the road pursuant to the easement. Substantial evidence on the record supports the trial court's findings that the damages caused by the placement of the wellhead are minimal and that it does not limit the use of the road.

■ After finding that the current road adequately skirts the wellhead and provides the same access it always has to the Wilhelm/Kordash properties, the court ruled that future expansion of the road would require the Beyersdorfs to accommodate those plans, either by relocating the road, shifting the easement if necessary, or by moving or lowering the wellhead. The court found it impractical to compel action on the wellhead unless widening the road requires it later. A trial court's application of equity is reviewed for an abuse of discretion. *See Willener v. Sweeting*, 107 Wn.2d 388, 397, 730 P.2d 45 (1986). Ultimately a court may refuse to enjoin or compel an action on equitable principles. *Arnold v. Melani*, 75 Wn.2d 143, 146-47, 449 P.2d 800, 450 P.2d 815 (1968). Although we sympathize with Ms. Wilhelm's desire

to settle the matter once and for all by ordered removal or movement of the wellhead immediately, we decline to second-guess the trial court's exercise of equitable discretion in this case.

## EQUITABLE ESTOPPEL

Ms. Wilhelm additionally contends the court should not have applied the doctrine of equitable estoppel to these facts. In its memorandum opinion, the trial court found that Ms. Wilhelm's failure to have a survey of the easement made and recorded was a form of silence that gave rise to the Beyersdorfs' reasonable belief that no easement existed.

Equitable estoppel is not favored. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). The party asserting estoppel must prove each of its elements by clear, cogent and convincing evidence. *Id.* These elements include (1) an admission, statement or act inconsistent with the claim asserted afterward; (2) action by the other party in reasonable reliance on that admission, statement or act; and (3) injury to that party when the first party is allowed to contradict or repudiate its admission, statement or act. *McDaniels v. Carlson*, 108 Wn.2d 299, 308, 738 P.2d 254 (1987). As the trial court noted here, estoppel can arise through silence when one has a duty to speak out. *Id.*

According to the trial court, Ms. Wilhelm shared the blame for her damages due to her failure to have the easement surveyed earlier. As we discussed above, however, Ms. Wilhelm had no duty to record a survey or to establish a legal description of the easement. *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995). Consequently, she made no statement that she later contradicted. Further, these facts do not support the second element. While the court ruled earlier in the partial summary judgment that the Beyersdorfs had notice of the easement from the title report and the existence of an established road on the property, it apparently decided at trial that even so, the Beyersdorfs rea-

sonably relied on their failure to find a surveyed easement. The evidence is simply not clear, cogent and convincing that their reliance was reasonable.

Equitable estoppel was not applied appropriately under these circumstances. On the other hand, the trial court properly exercised its equitable discretion in deciding that the Beyersdorfs need not take any action regarding the wellhead until the dominant estate owners later decide to expand the road. The court neither eliminated nor significantly modified the easement. On balance, its improper application of equitable estoppel had no effect on the ultimate propriety of its rulings.

### Conclusion

In granting reformation and considering issues of estoppel and injunction, the trial court exercised its considerable equitable discretion. Substantial evidence supports the court's findings that the established road across the Beyersdorfs' property was intended to serve as the Featherman easement. Further, this easement was properly filed in the assessor's office. Although the easement description was admittedly ambiguous, the record supports the conclusion that the Beyersdorfs were on notice of its existence over their land. *See Coy v. Raabe*, 77 Wn.2d 322, 325, 462 P.2d 214 (1969) (in Washington, law and equity are merged and the legal standard of review applies). Accordingly, the trial court did not abuse its discretion in reforming the easement to reflect its actual use. Additionally, we find that the court properly exercised its discretion in refusing to order damages or immediate removal of the wellhead.

Affirmed.

BROWN, A.C.J., and SWEENEY, J., concur.