IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EVELYN RUTH ZEHNER, a widow, | ) | No. 30271-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVELYN MARIE ZEHNER, aka | ) | UNPUBLISHED OPINION |
| EVELYN MARIE ZEHNER-SMITH, aka | ) | |
| EVELYN MARIE SMITH, individually, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Thirty-nine years after quitclaiming real property to her eldest

daughter, Evelyn Ruth Zehner sought to have the deed reformed to include her other four

daughters. The trial court granted summary judgment in Ms. Zehner's[1] favor and then

held a bench trial on the counterclaim brought by her eldest daughter, Ms. Evelyn Marie

Zehner-Smith, for reimbursement of expenses paid to care for the property. Because

summary judgment was precluded by the presence of genuine issues of material fact, we

reverse and remand for a new trial on both the claim and counterclaim.

---

[1] For clarity, this opinion refers to respondent Evelyn Ruth Zehner as Ms. Zehner
and appellant Evelyn Marie Zehner-Smith as Ms. Smith.

## FACTS

In 1971, Ms. Zehner quitclaimed the family farm to her eldest daughter, Ms. Smith. The parties agree that Ms. Smith paid no monetary consideration for the property, but disagree on whether Ms. Smith provided other valuable consideration. They also agree that Ms. Zehner quitclaimed the property in order to protect it. The parties diverge on the questions of why the property was to be protected and for whom it was to be protected.

Ms. Zehner declared that she quitclaimed the property to protect it for her five daughters and that she wanted Ms. Smith to hold it in trust for all the daughters. Ms. Zehner also declared that she wanted it protected from her then pending divorce and in case something happened during an upcoming surgery.

Ms. Smith testified in her deposition that her mother had only told her that she wanted the property protected. She later elaborated that her mother wanted Ms. Smith to protect the property for her and denied that her mother ever mentioned protecting the property for the whole family, for the other daughters, or holding it in trust for them. Ms. Smith thought that the transfer had something to do with her mother's divorce, but did not know for certain her mother's intentions. Ms. Smith also testified to being unaware at the time of the transfer that her mother had upcoming surgery or other health problems.

2

The deed is silent on these issues. It is a simple quitclaim form naming Ms. Zehner as the grantor and Ms. Smith as the grantee and appropriately describing the property. The deed was signed by Ms. Zehner, dated, notarized, and recorded. The space on the deed for listing consideration is blank.

After the transfer, Ms. Zehner spent the next four decades living on the property rent free; she declared that she forgot about the conveyance. As the children grew up, they moved off the property leaving Ms. Zehner as the only tenant. Although Ms. Smith did not live on the property, her family frequently visited Ms. Zehner, paid the taxes, made various improvements, and also used the property to store both scrap and junk materials. The other daughters would also visit their mother with varying degrees of frequency, but none were active on the property like Ms. Smith and her family.

In 2010, a rift developed between Ms. Smith and the rest of the Zehner family. This rift came to a climax when Ms. Smith sent a letter ordering her mother off the property. The letter reminded the family that Ms. Smith held title to the property. Ms. Zehner responded by filing this action seeking reformation of the deed, its nullification, or creation of a constructive trust, and damages for unjust enrichment. Ms. Smith brought a counterclaim seeking to quiet title in her name or if the deed was to be reformed then for reimbursement of expenses paid while caring for the property.

3

After limited discovery, the parties brought cross-motions for summary judgment. The trial court granted Ms. Zehner's motion for reformation on the basis of either unilateral or mutual mistake. The court reformed the deed to name all five daughters as grantees[2] and also granted Ms. Zehner a life estate.[3] The case then went to a bench trial on the issue of whether Ms. Smith was entitled to reimbursement. Because it would be inequitable to force Ms. Smith to shoulder the burden of caring for someone else's property, the court ordered reimbursement for the amount of taxes and insurance paid by Ms. Smith throughout the decades. But, the trial court completely offset the amount of reimbursement by the amount that it would cost to remove the junk that the Smiths had let pile up on the property on the basis that the two figures probably evened out. The only award that Ms. Smith received was reimbursement of $1,113.27 for property taxes paid while the property was in litigation. Following the trial, Ms. Smith timely appealed to this court.

---

[2] On remand, the parties should consider whether each of the daughters is an indispensible party under CR 19 considering that each has an interest in the subject matter of the litigation and because reformation would create tax, tort, and other potential liabilities for each of them.

[3] We are unsure how the trial court could grant Ms. Zehner a life estate when no such relief was pleaded in the complaint. *See, e.g., Trask v. Butler*, 123 Wn.2d 835, 846, 872 P.2d 1080 (1994).

4

ANALYSIS

Although Ms. Smith raises a number of issues, the sole issue we address is whether the trial court properly granted summary judgment. The standard of review on summary judgment is de novo. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 842, 999 P.2d 54 (2000). We consider the facts in a light most favorable to the nonmoving party, Ms. Smith. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

To obtain reformation, Ms. Zehner had to provide "clear, cogent and convincing evidence of a mutual mistake or a unilateral mistake coupled with inequitable conduct." *Wilhelm*, 100 Wn. App. at 843. The trial court did not specify whether its decision was based on a mutual mistake or a unilateral mistake, so the evidence for both will be reviewed in turn.

"Mutual mistake occurs if the intention of the parties is identical at the time of the transaction and the writing executed by them does not express that intention." *Id.* Further, the mutual mistake must be material and "the truest test of materiality is whether the contract would have been entered into had the parties been aware of the mistake." *Simonson v. Fendell*, 101 Wn.2d 88, 92, 675 P.2d 1218 (1984).

5

The alleged mutual mistake is that both Ms. Smith and Ms. Zehner were laboring under the mistaken belief that minors cannot hold title to property.[4] Ms. Zehner claims that she wanted the property protected for her five daughters and that she would have added the other daughters to the deed if they had been of legal age. According to Ms. Smith, her mother never expressed any intent of having the property protected for the whole family and that the other daughters could not have been added anyway because they were minors.

This evidence establishes only that both women were mistaken about the law of conveyances. However, a mutual mistake of law is ordinarily not grounds for reformation. *Scott v. Petett*, 63 Wn. App. 50, 58, 816 P.2d 1229 (1991). Furthermore, there is a complete lack of evidence concerning Ms. Smith's intentions at the time of conveyance. Thus, the evidence also fails to establish the required fact that both women intended to protect the property for the other daughters. Because the evidence is both conflicting and incomplete, it was not possible to prove that Ms. Smith and Ms. Zehner had the identical intent to protect the property for the daughters. The only way for the trial court to resolve this dispute was to weigh the parties' credibility, which the court cannot do on summary judgment. *Riley v. Andres*, 107 Wn. App. 391, 398, 27 P.3d 618

---

[4] The Supreme Court held in an early case that a minor can take by deed because "the infant will be presumed to have accepted it." *Bjmerland v. Eley*, 15 Wash. 101, 106, 45 P. 730 (1896).

(2001). Moreover, the requirement of proof by clear, cogent, and convincing evidence "'is not met by [a party's] mere self-serving declaration.'" *In re Estate of Allen*, 54 Wn.2d 616, 622, 343 P.2d 867 (1959) (quoting *Berol v. Berol*, 37 Wn.2d 380, 223 P.2d 1055 (1950)). Since there was material evidence in dispute and because necessary evidence was lacking, the trial court erred in granting Ms. Zehner judgment as a matter of law on the theory of mutual mistake.

To reform the deed on the basis of unilateral mistake, Ms. Zehner needed to establish by clear, cogent, and convincing evidence that Ms. Smith engaged in inequitable conduct. *Wilhelm*, 100 Wn. App. at 843. Inequitable conduct for purposes of reformation occurs when a party "knowingly conceals a material fact from the other party and has a duty to disclose that knowledge to the other party." *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 664, 155 P.3d 140 (2006). However, Ms. Zehner never alleged that her daughter withheld a material fact from her and, thus, the trial court could not have found inequitable conduct. Accordingly, there was no basis in law for granting reformation at summary judgment based on a unilateral mistake with inequitable conduct.

Because we remand the reformation claim for trial, we also reverse the judgment

on the counterclaim and remand it for retrial. We need not address Ms. Smith's remaining

arguments as it is unclear if they will arise at retrial.[5]

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
                    Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.

---

[5] We agree that finding of fact 18 concerning the costs of cleaning the property is not supported by the evidence because the estimate was speculative. We also question Ms. Zehner's standing, as she admittedly does not own the property, to seek an offset for alleged damages to the land.