IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KATHERINE C. SPELMAN, trustee under the Katherine C. Spelman Trust dated April 30, 1999 and KAREN M. GARDNER under the Karen M. Gardner Trust dated April 30, 1999,<br><br>     Respondents,<br><br>  v.<br><br>JESSE LEE AND IRENE JULIE GOBELI, husband and wife,<br><br>     Appellants. | No. 84437-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — In this lawsuit between the owners of neighboring properties, Jesse Lee and Irene Gobeli (collectively, "the Gobelis") appeal the trial court's order on cross motions for summary judgment. Because undisputed facts establish that the Gobelis' property is subject to a valid and enforceable easement, we affirm.

FACTS

The Gobelis own residential property on Vashon Island adjacent to property owned by Katherine Spelman and Karen Gardner. Before 2018, Spelman and Gardner (collectively, "the sellers") owned both parcels.[1] At some point around 2015, the sellers

---

[1] The record indicates that the sellers purchased the parcel they currently own in 2009 and purchased the parcel eventually sold to the Gobelis in 2014.

Citations and pincites are based on the Westlaw online version of the cited material.

hired a drilling company to determine placement and install a well on the property. The well and well house are located on the parcel now owned by the Gobelis.

The sellers also had a single-family home built on the neighboring parcel now owned by the Gobelis, and listed the property on the market in the Spring of 2018. Prior to the sale, in order to continue to access, use, and maintain the well and pipelines that serve the well, the sellers retained a local attorney to draft and record a document granting easement in favor of the parcel they would retain after the sale. A "Well House and Waterline" easement ("well easement"), recorded immediately prior to the deed at the time of closing, grants an easement over the Gobelis' parcel to access the well and well house in order to maintain, repair, and replace the well, well house, equipment, and the existing pipeline.[2] The easement encompasses a 10-foot radius around the well itself and an access road to the well.

At some point after the sale, a dispute arose as to the sellers' right to enter the Gobelis' property to access the well. And, while the initial plan had been for the well water system to irrigate both parcels, the sellers ultimately denied well water access to the Gobeli parcel because of local regulations limiting the amount of irrigation water that may be drawn from a well. The sellers filed the instant lawsuit, apparently seeking

---

[2] Although the Gobelis suggest that the sellers "hastily wrote and recorded an easement," they do not expressly challenge notice of the easement. Below, the sellers provided evidence indicating that the Gobelis had notice prior to the sale and it is undisputed that the easement was recorded at the time of the sale. See Wilhelm v. Beyersdorf, 100 Wn. App. 846, 999 P.2d 54 (2000) ("Recording the easement with the county auditor gives constructive notice to any successors in title.").

declaratory and injunctive relief.[3]

The Gobelis filed a motion for summary judgment. Their argument was based on the description of the "Access Road to Well Site" in the well easement instrument. Because the metes and bounds description of the easement extends beyond the Gobelis' property and includes property owned by Diane Matuska, who did not sign or otherwise acknowledge the written easement document, the Gobelis argued that the easement failed to satisfy the statute of frauds, and is therefore, void. Matuska owns property directly south of both the sellers' and the Gobelis' parcels and includes a portion of the access road that serves the well and intersects with a private road.

At the same time, the sellers sought partial summary judgment, arguing that the well easement is valid and enforceable as to the Gobelis' property. The sellers also claimed that the Gobelis lacked standing to challenge the enforceability of the easement as it relates to Matuska's property. Relying on Wilhelm, 100 Wn. App. at 842, they also argued that an instrument creating an easement satisfies the requirements of the statute of frauds even if it fails to "establish the easement's actual location," so long as it describes the servient or burdened estate in sufficient legal terms. The sellers pointed out that while the well easement instrument "contains a mistaken easement area, there is no error with respect to the identification of the servient and dominant estate." Alternatively, the sellers contended that, if the court determined that the easement, as written, was unenforceable as to the Gobelis' property, it could reform the document to

---

[3] Neither the sellers' complaint nor any other pleadings are included in the designated record on review. However, it appears from the record that the Gobelis asserted counterclaims and a third-party compliant naming a local Windermere Real Estate office and an individual real estate agent. The third-party defendants are not parties to this appeal and, according to the Gobelis' opening brief, they have now voluntarily dismissed their counterclaims.

accurately describe the location of the easement to conform to the express intent of the easement document.

After a hearing, the trial court granted the sellers' motion, denied the Gobelis' motion, and ordered that the Gobelis "shall not obstruct" the sellers' "access to the easement area."

## DISCUSSION

The Gobelis contend the trial court misapplied established law in granting summary judgment in favor of the sellers. Specifically, the Gobelis contend (1) the well easement does not satisfy the statute of frauds because it encumbers Matuska's property without her signature, and (2) the trial court applied the wrong standard to determine whether Matuska consented to the encumbrance of her property.

Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. Keck v. Collins, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015). We review summary judgment orders de novo, viewing the facts and all reasonable inferences in the light most favorable to the non-moving party. Id. at 370. Summary judgment should be granted in favor of the moving party only if reasonable minds could reach but one conclusion from all the evidence. Zonnebloem, LLC v. Blue Bay Holdings, LLC, 200 Wn. App. 178, 183, 401 P.3d 468 (2017).

An "easement" is a nonpossessory right to use the land of another. Maier v. Giske, 154 Wn. App. 6, 15, 223 P.3d 1265 (2010). "An express grant of easement is a conveyance within the meaning of the statute of frauds." Berg v. Ting, 125 Wn.2d 544,

551, 886 P.2d 564 (1995). The purpose of the statute of frauds is to prevent fraud arising from inherently uncertain oral agreements. Howell v. Inland Empire Paper Co., 28 Wn. App. 494, 498, 624 P.2d 739 (1981). The statute of frauds requires that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed...." RCW 64.04.010. Deeds must "be in writing, *signed by the party bound thereby*, and acknowledged . . . ." (emphasis added) RCW 64.04.020. A trial court's determination with regard to compliance with the statute of frauds is a question of law that we review de novo. Dickson v. Kates, 132 Wn. App. 724, 733, 133 P.3d 498 (2006).

The Gobelis' argument hinges on the premise that Matuska is a "party bound" by the well easement conveyance within the meaning of the statute of frauds and the absence of her signature is fatal to the well easement. See RCW 64.04.020.

But according to well-settled law, the statute of frauds does not mandate that the conveying document describe the easement's actual location. Instead, the statute of frauds requires that the burdened property, also known as the servient estate, must be described in sufficient legal terms. Berg, 125 Wn.2d at 549 (grant of easement must describe a specific servient estate; that is an absolute). Here, the document that creates and conveys the well easement identifies only one property that is encumbered by the easement—the Gobelis' property—and it is undisputed that the document provides an accurate legal description of that property. The Gobelis nonetheless insist that Matuska's consent is the "critical question" that governs whether the easement effectively burdens their property. The Gobelis cite no authority that supports their position. And insofar as the Gobelis challenge the trial court's oral remarks about

Matuska's failure to object to the well easement, because our review of summary judgment is de novo, we do not review the superior court's reasoning, or purported findings, for error. See Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1978) (findings and conclusions are superfluous in summary judgment rulings and have no weight on appeal).

Our courts' decisions in Berg and Wilhelm, 100 Wn. App. at 841 are instructive. Berg involved an attempt to grant an easement across portions of two properties that the owners sought to subdivide. 125 Wn.2d at 547-49. Because the easement was meant to burden only certain plots in the future subdivision, and not the entire property, the parties described the burdened estate by reference to "a future 'finally approved' short plat application," a document that did not exist until almost four years after the grant of the easement. Id. at 549. And there were discrepancies between lots referenced in the easement instrument and the lots that existed in the finally approved plat. Id.

Our Supreme Court held that the reference to a future instrument did not sufficiently describe the burdened property. Id. at 551. The court explained:

> [I]n the case of an easement, a "deed [of easement] is not required to establish the actual location of an easement, but is required to convey an easement," which encumbrances a specific servient estate . . . The servient estate must be sufficiently described.

Id. (alteration in original) (internal citations omitted) (quoting Smith v. King, 27 Wn. App. 869, 871,620 P.2d 542 (1980)).

In Wilhelm, the owner of landlocked property obtained an easement across adjoining property for access, but the easement as drafted did not precisely fix its location. 100 Wn. App. at 839. The owners who later purchased the property burdened

6

by the easement appealed a trial court decision upholding the easement and allowing the instrument to be reformed to conform to the existing access road.  Id. at 841.  The owners of the servient estate claimed that because the easement description was ambiguous, the instrument did not create an enforceable easement.  Id. at 842  Division Three of this court disagreed, and held that the document "effectively created a valid easement" because the burdened estate was "properly located by its exact legal description" in the instrument.  Id.  The court stated:

> Of course, the lack of a legal description for the easement was not lethal. An easement's precise location is not required, only the exact location of the servient estate. Berg, 125 Wn.2d at 551. Because the servient estate was adequately described, the ambiguous language [describing the access road] easement was not, strictly speaking, insufficient to execute their intention.

Id. at 844.

The Gobelis do not address this line of authority in their opening brief.  In their reply brief, the Gobelis argue that Wilhelm is inapplicable because the circumstances here involve an "unsigned" conveyance document, whereas the issue in Wilhelm was an easement description that did not match the actual location of the access road.  But, here, just as in Wilhelm, there is a discrepancy between the document's description of the easement area and the location of the well access road as it exists on the servient estate.  The discrepancy has less practical significance here than in Wilhelm because there is nothing to suggest that the overinclusive description of the access road portion of the easement creates any confusion as to where the access road is located on the Gobelis' property.  And, contrary to the Gobelis' assertion, the document conveying the easement was signed by the sellers, who owned both the burdened and the benefited parcels at the time of the conveyance.

CONCLUSION

Nothing in the conveyance document suggests that Matsuka's property is encumbered by the well easement.[4]   To create and convey the easement on what is now the Gobelis' property required only the acknowledgement or consent of the parties bound by the conveyance.  The easement document clearly conveys its purpose—to allow the benefited property to utilize the well and its water system and to allow access across the burdened property to do so.  And because the instrument sufficiently describes the servient estate, the Gobelis' parcel, in legal terms, it satisfies the requirements of the statute of frauds.  As in Wilhelm, error in the description of the easement location neither invalidates the easement nor renders it unenforceable.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____          _____
Hazelrigg, A.C.J.                              Smith, C.J.

---

[4] While the summary judgment motions were pending, Matuska granted an express "ingress/egress easement" in favor of the sellers to traverse her property to access the well via the private road and portion of the well access road that is located on her property.  This development does not affect our analysis.