**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DALTON M, LLC, a Washington limited liability corporation, | ) ) ) | No. 37448-3-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| NORTH CASCADE TRUSTEE SERVICES, INC. | ) ) ) | |
| Defendant, | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee; and DOES 1 through 10 inclusive, | ) ) ) | |
| Appellants. | ) | |

FEARING, J. —

> *On what principle of justice can a plaintiff wrongfully run down on a public highway recover his doctor's bill but not his lawyer's bill?* Ehrenzweig, *Reimbursement of Counsel Fees and the Great Society*, 54 Calif. L. Rev. 792, n. 4 (1966).

Defendant U.S. Bank foreclosed on a parcel of land owned by plaintiff Dalton M, LLC despite records in its agent's possession showing Dalton M to be the owner of the land and the bank's deed of trust no longer encumbering the property. For thirteen

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

months, Dalton M entreated U.S. Bank to remove its cloud on the title. U.S. Bank never

disputed that it wrongfully foreclosed on the land, but the bank's ears turned deaf to

Dalton M's plea. The inaction of the bank forced Dalton M to file suit. The superior

court held in Dalton M's favor on slander of title and quiet title causes of action. The

superior court awarded Dalton M reasonable attorney fees as the only damages on the

successful slander of title action.

We must reverse the superior court's judgment in favor of Dalton M on the slander

of title claim because the bank's darkening of the land title did not interfere in any

pending sale by Dalton M. We still affirm an attorney fees award, however, because of

the equitable exception to the American rule that generally denies an award of attorney

fees to the prevailing party. In a case of first impression, we hold that fees can be

awarded for the prelitigation bad faith of a party that entails a refusal to honor a valid

claim, thereby forcing the plaintiff to file suit to rectify a problem.

FACTS

This appeal involves the clouding of title on a parcel we coin "Parcel 0402." The

appeal pits Dalton M, LLC against U.S. Bank National Association, as trustee, successor

in interest to Bank of America, National Association, as trustee, successor by merger to

Lasalle Bank National Association as trustee for Morgan Stanley Mortgage Loan Trust

2007-IXS Mortgage pass-through certificates, series 2007, IXS. Instead of constantly

referring to the bank with its exorbitant name, we refer to it as "U.S. Bank" or "the

2

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

bank." Dalton M's owner purchased Parcel 0402 at a tax sale. U.S. Bank held a deed of trust on the property that the tax sale erased. Nevertheless, U.S. Bank thereafter foreclosed on the land and filed papers falsely claiming ownership of Parcel 0402.

The case's story begins fifteen years ago with the ownership of Parcel 0402 by James and Angela Fleck. On August 16, 2006, during the heyday of profligate jumbo loans and subprime mortgage-backed securities sold as collaterized debt obligations, James and Angela Fleck executed a note and deed of trust to obtain a $536,250 loan issued by GreenPoint Mortgage Funding. The deed of trust appointed Pacific Northwest Title as trustee and named the ubiquitous Mortgage Electronic Registration Systems (MERS), rather than GreenPoint Mortgage, as the beneficiary. The deed of trust secured two parcels of property owned by the Flecks in Spokane County, parcels number 26071-9008 (Parcel 9008) and 26071-0402 (Parcel 0402). Parcel 9008 had a home thereon. The adjacent Parcel 0402 remained an undeveloped lot.

The August 16, 2006 deed of trust contained a single combined legal description for Parcels 9008 and 0402. The deed of trust also listed a single common property address, 12021 N. Nine Mile Road, Nine Mile Falls, WA 99026, although immediately above the listing of the street address, the document listed the numbers of the two separate parcels. After execution of the loan documents, Angela Fleck deeded her interest in the two parcels to James Fleck, as his separate property, by a quitclaim deed.

3

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

James Fleck failed to pay property taxes for the vacant lot, Parcel 0402. On December 9, 2011, Mark and Tracy Faulkes purchased Parcel 0402 at a tax foreclosure sale. A treasurer's deed, recorded January 5, 2012, conveyed the lot to the Faulkes. Mark Faulkes is an experienced real estate investor, who often purchased property in a tax or a mortgage foreclosure. A real estate excise tax affidavit, filed with the deed, listed Mark and Tracy Faulkes' address as P.O. Box 141023, Spokane Valley, Washington 99214. After the 2011 tax sale of Parcel 0402, only Parcel 9008 remained encumbered by the Flecks' deed of trust to MERS as nominee of GreenPoint Mortgage.

On July 2, 2012, MERS assigned its beneficiary's interest in the Flecks' deed of trust to Morgan Stanley Mortgage Loan Trust 2007-IXS, Mortgage Pass-Through Certificates, Series 2007-IXS, U.S. Bank National Association, as Successor in Interest to Bank of America, National Association as Successor by Merger to LaSalle Bank National Association. The parties acknowledge that the assignment of deed of trust misstated the assignee of the beneficiary's interest. They agree, however, that, as a result of the assignment of the deed, U.S. Bank became the note holder for the loan, then secured only by Parcel 9008. Unfortunately, however, the assignment contained the same legal description as the initial deed of trust. In other words, the assignment purportedly transferred an interest in the vacant lot, Parcel 0402, to U.S. Bank. On August 2, 2012, U.S. Bank recorded the assignment of the beneficial interest under the deed of trust.

4

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

For some unknown reason, megabanks decline to service their own loans. On November 1, 2013, U.S. Bank appointed Ocwen Loan Servicing, LLC (Ocwen), of West Palm Beach, Florida, to service the Fleck loan secured by Parcel 9008. U.S. Bank gave Ocwen a limited power of attorney to act on its behalf. The power of attorney authorized, among other conduct, Ocwen to sign documents, on behalf of U.S. Bank, related to the Fleck loan, including actions to foreclose on the secured property. A broad provision in the document empowered Ocwen to "transact business of any kind regarding the Loans, as the Trustee's act and deed. . . ." Exhibit P-13 at 536. On appeal, U.S. Bank concedes an agency relationship with Ocwen. The bank does not argue that Ocwen took any step, in the course of the foreclosure on Parcel 0402, contrary to its authority as agent of the bank.

Ocwen Loan Servicing is a large corporation with thousands of employees. Banks, such as U.S. Bank, hire a loan servicer, such as Ocwen, to handle daily servicing of a loan, which includes communication with borrowers, receiving loan payments, and commencing foreclosure proceedings when directed by the trustee.

For each loan it services, Ocwen Loan Servicing retains a file with the entire history of the loan. Ocwen daily documents in the file any communications regarding or events about the loan. The company claims that it maintains accurate and updated information on each loan.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

On December 3, 2013, Mark and Tracy Faulkes recorded a quitclaim deed, by which they transferred Parcel 0402 to their company, Dalton M, LLC. Mark Faulkes serves as president of Dalton M. The deed listed the Faulkes' address as 212 South McDonald Road, Spokane, Washington 99216. The deed legally described Parcel 0402 as "MANHATTAN BEACH SLY 100FT B14, Parcel No. 26071-0402." Exhibit P-13 at 248.

In 2014, James Fleck defaulted on the loan secured by the 2006 deed of trust on Parcel 9008 and formerly Parcel 0402. Ocwen then initiated foreclosure efforts. Ocwen ceased efforts when Ocwen discovered that the 2012 assignment of deed of trust named Morgan Stanley, rather than U.S. Bank, as assignee of the beneficial interest in the deed of trust.

Between April 2014 and 2015, Ocwen procured numerous title reports from Chicago Title Insurance Company and parcel information from the Spokane County Assessor's Office for purposes of commencing and recommencing the foreclosure process. On April 4, 2014, Ocwen ordered from Chicago Title a title report for Parcels 0402 and 9008. Ten days later Ocwen received, from the title company, a report with the legal description the same as the 2006 deed of trust executed by James and Angela Fleck. The report listed as owners of the property:

> James J. Fleck, who acquired title as a married man as his sole and separate property, as to a portion of said premises and Dalton M, LLC, as to the remainder

6

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

Exhibit 13 at 225. Note that the report did not suggest coownership of both parcels. The report did not separate ownership of the property by parcel number. The title report did not mention the 2011 treasurer's tax deed to Mark and Tracy Faulkes or the 2013 quitclaim deed from the Faulkes to Dalton M. Nevertheless, the package that arrived with the title report included a copy of the treasurer's deed to Mark and Tracy Faulkes for Parcel 0402.

Ocwen Loan Servicing trial witness, Harrison Whittaker, acknowledged Ocwen uploaded the title report package into its records system in April 2014. Thus, by April 2014, Ocwen, agent of U.S. Bank, possessed the treasurer's deed showing the transfer of Parcel 0402 to Mark and Tracy Faulkes.

On April 15, 2014, Ocwen forwarded the title report to its counsel Robinson Tait, P.S. U.S. Bank also maintained an attorney-client relationship with the law firm, Robinson Tait.

On May 12, 2015, Ocwen received another title report from Chicago Title Insurance Company. This 2015 report read similarly to the 2014 report with the owners listed as James J. Fleck as owner of a portion and Dalton M, LLC as owner of another portion, but did not distinguish between the parts of the property owned by whom.

On May 14, 2015, Ocwen Loan Servicing procured written parcel information from the Spokane County website. The website contained two separate documents, one

7

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

for Parcel 9008 and one for Parcel 0402. The Spokane County information listed James Fleck as owner of Parcel 9008 and Dalton M as owner of Parcel 0402. Parcel 0402's data listed a post office address and the street address for Dalton M of 212 South McDonald Road, Spokane Valley, WA 99216. Thus, the undisputed facts show that Ocwen, agent of U.S. Bank, by May 2015, possessed documents that showed Dalton M as sole owner of Parcel 0402. Ocwen also possessed a correct address for Dalton M. By that date, Ocwen had possessed for more than one year the treasurer's deed to Mark and Tracy Faulkes for the parcel.

On July 27, 2015, Ocwen Loan Servicing received a third title report from Chicago Title Insurance Company. This report repeated the information found in the two earlier title reports.

On December 28, 2015, Ocwen Loan Servicing employee Netty Bangala prepared a chain of title checklist. The trial record does not describe the content of the checklist. That same day, Bangala, as authorized agent of MERS, executed an assignment of deed of trust which corrected the assignee in the original assignment of deed of trust from Morgan Stanley to U.S. Bank.

On January 5, 2016, Ocwen Loan Servicing recorded the corrected assignment of deed of trust with the Spokane County Auditor's Office. Remarkably, according to Ocwen employee Harrison Whittaker, this correction of the correct beneficiary of the deed of trust took two years to accomplish.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In January 2016, U.S. Bank recommenced foreclosure proceedings on both Parcel 9008 and Parcel 0402. The bank's counsel Robinson Tait referred U.S. Bank's foreclosure on both parcels to North Cascade Trustee Services, Inc. (North Cascade). On January 29, 2016, U.S. Bank signed an appointment of North Cascade as successor trustee in place of Pacific Northwest Title.

On March 29, 2016, North Cascade Trustee Services signed a notice of trustee's sale, which announced an intention to foreclose on the 2006 deed of trust. North Cascade recorded the notice the following day. The notice announced the intent to conduct a trustee's sale, on August 12, 2016, of the property purportedly encumbered by the deed of trust. The notice read that North Cascade intended to sell Parcel 9008 and Parcel 0402, commonly known as 12021 N. 9 Mile Road, Nine Mile Falls, WA 99026. North Cascade sent the notice to Angela Fleck, James Fleck, and Dalton M, LLC, all at the same address: 12021 N. 9 Mile Road, Nine Mile Falls, WA 99026. North Cascade did not send, to Dalton M, the notice of trustee's sale to any other address.

On April 13, 2016, Ocwen Loan Servicing received a fourth title report from Chicago Title Insurance Company. The report again listed James Fleck and Dalton M, LLC as owners.

On August 4, 2016, Ocwen Loan Servicing sent Robinson Tait instructions for the August 12, 2016 trustee's sale. Ocwen directed Robinson Tait to bid the amount of

9

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

$300,000 on behalf of U.S. Bank.  In turn, Ocwen instructed Robinson Tait to place title to the property in the name of U.S. Bank.

On August 12, 2016, North Cascade Trustee Services conducted a nonjudicial foreclosure sale, and U.S. Bank placed the winning bid.  North Cascade prepared, executed, and recorded a trustee's deed, which deed noted the sale and transfer of both Parcel 9008 and Parcel 0402 to U.S. Bank.  Paragraph 5 of the deed noted that U.S. Bank previously "delivered to the current Trustee [North Cascade] a written request directing the Trustee to sell the Property in accordance with law and the terms of the Deed of Trust."  Exhibit 104 at 1.  North Cascade attached the legal description for both parcels to the trustee's deed.  North Cascade recorded the trustee's deed on September 15, 2016.

The real estate excise tax affidavit recorded with the trustee's deed also confirmed a sale of Parcel 0402 to U.S. Bank.  Kyle Shorin signed, on the affidavit, as agent of both North Cascade Trustee Services, the grantor, and U.S. Bank, the grantee.  Thereafter, Spokane County parcel information listed U.S. Bank as the owner of both parcels.

Ocwen Loan Servicing manager Harrison Whittaker acknowledged at trial that Ocwen, on behalf U.S. Bank, directed North Cascade to sell Parcel 0402 as part of a nonjudicial foreclosure of the entire parcel listed on the 2006 deed of trust.  In turn, U.S. Bank instructed the law firm Robinson Tait to take title to Parcels 0402 and 9008 in the name of U.S. Bank.

10

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In late 2016, Mark Faulkes learned that an online real estate platform, Hubzu, listed Parcel 0402 for sale. On further investigation, Faulkes discovered the recording of the trustee's deed to U.S. Bank on Dalton M's parcel. Faulkes had not received any notice of the trustee's sale. Dalton M never used and never received mail at the 12021 North Nine Mile Road, Nine Mile Falls address.

In early 2017, Mark Faulkes contacted North Cascade Trustee Services about the cloud on Dalton M's title to Parcel 0402. After he communicated with North Cascade representatives for a month, North Cascade referred him to legal counsel Robinson Tait, P.S.

After North Cascade directed Mark Faulkes to contact Robinson Tait, Faulkes, as president of Dalton M, attempted to procure U.S. Bank's cooperation to remove its claim of title to Parcel 0402 through communications with the law firm. U.S. Bank, for purposes of this appeal, does not dispute that the law firm, Robinson Tait, P.S., acted as its agent.

On January 31, 2017, Sean Campbell, an attorney at Robinson Tait, wrote an e-mail message to Faulkes:

> I received your voice mail. Wanted to provide you a quick update. I've escalated the issue with the servicer for the beneficiary [Ocwen] to determine how they would like to go about resolving the issue and awaiting a response.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

Report of Proceedings (RP) at 152.  Notes retained by Ocwen do not establish any escalation of the issue.

On March 9, 2017, Robinson Tait attorney Nicholas Dalusio wrote an e-mail to Faulkes: "'It is my understanding the bank is submitting this to title company to resolve.'"  RP at 153.  No records or testimony support that U.S. Bank ever sought assistance from the title company for a resolution of the cloud on the title.

By March 2017, Mark Faulkes' peevity turned to exasperation.  On April 10, 2017, Faulkes wrote to Nicholas Dalusio at Robinson Tait: "'If you can't provide a response to this matter, forward U.S. Bank's contact information.'"  RP at 153.  On April 11, 2017, Dalusio responded:

> I just received response today that this has been opened in [Ocwen's] title department to handle.

RP at 153.  Ocwen retained no notes that show that "this has been opened" in its title department or that the department took any steps to resolve the title dispute.  Robinson Tait refused to provide Faulkes any contact information for a representative of U.S. Bank since the law firm represented the bank.  The law firm insisted that Faulkes contact only it.

An e-mail sent thereafter by a third attorney at Robinson Tait, Joe Solseng, mentioned confusion stemming from the lack of a legal description for Parcel 0402.  On May 31, 2017, Solseng wrote to Faulkes:

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

> . . . More importantly, according to the title, legal description that was used on your deed created confusion. Not clear. We're recommending we hire a surveyor to create a new legal description, which will match the actual property value.

RP at 110. U.S. Bank presented no evidence that Robinson Tait or it hired a surveyor, let alone contacted a surveyor for assistance.

On July 26, 2017, Joe Solseng wrote:

> "Sorry it takes so long to respond. Quitclaiming property back to you is not as easy as it should be. The legal description used in the tax deed does not mesh with anything in our deed of trust. I've checked with two people from title and they cannot figure out . . . the legal description."

RP at 118. No records show any contact with the title company during the summer of 2017.

For eight months, Mark Faulkes engaged in an unsuccessful e-mail exchange and in telephone conversations with North Cascade Trustee Services and Robinson Tait. During this window of time, he sought a deed from U.S. Bank transferring Parcel 0402 to Dalton M. Finally, in September 2017, Faulkes retained counsel. Counsel for Dalton M received assurances from U.S. Bank and its attorneys similar to pledges forwarded to Faulkes. U.S. Bank still failed to rectify the cloud on the title. During this time, U.S. Bank never contended that it was the rightful owner of Parcel 0402.

PROCEDURE

On February 22, 2018, five months after Dalton M's counsel began efforts to obtain a quitclaim deed and thirteen months after Mark Faulkes first contacted U.S.

13

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

Bank's agent, Dalton M initiated this lawsuit against North Cascade Trustee Services and "U.S. Bank National Association, as Trustee." Dalton M asserted causes of action for quiet title, slander of title, unjust enrichment, and Consumer Protection Act violations. Dalton M prayed for judgment against both defendants for "costs and attorney fees incurred" and for "such other relief that the Court deems just and proper." Clerk's Papers (CP) at 10. In its answer and affirmative defense, U.S. Bank denied that Dalton M should receive quiet title to Parcel 0402. U.S. Bank prayed that the court deny Dalton M any relief. U.S. Bank did not seek reformation of any deed in its answer and affirmative defenses.

The trial court determined, during summary judgment proceedings, that Dalton M could assert a Consumer Protection Act claim against North Cascade, but not U.S. Bank. North Cascade thereafter filed bankruptcy proceedings. U.S. Bank was the only active defendant at trial and remains the only active defendant on appeal.

On November 18, 2019, the parties submitted a trial management joint report. The report read, in part: "The parties agree that the 2016 [trustee's sale] Deed affecting, among others, Parcel No. 26071.0402 [0402] should be reformed." CP at 875.

On December 17, 2019, a bench trial commenced. Trial centered around whether U.S. Bank should be held liable for slander of title. U.S. Bank agreed that title to Parcel 0402 remained in its name and that Dalton M, LLC could not sell the property until the bank relinquished title. U.S. Bank conceded that Dalton M owned Parcel 0402.

14

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

During closing, Dalton M waived its unjust enrichment claim. In its closing argument, counsel for U.S. Bank commented that the bank had never opposed a quiet title order in favor of Dalton M. Counsel argued, however, that the court should fix the title by reforming the trustee's deed, rather than quieting title. The trial court asked Dalton M if it would consent to the alteration of the pleadings. Dalton M did not consent to an amendment of the pleadings. Dalton M contended reformation was not the appropriate remedy.

The trial court issued an oral ruling. The court found in favor of Dalton M on its claims of quiet title and slander of title. Regarding the slander of title claim, the trial court determined that U.S. Bank maliciously published a false claim of ownership to Parcel 0402 when it recorded the trustee's deed. The court ruled that U.S. Bank published the false claim in bad faith because the bank had "been aware of Dalton M's interest in Parcel 0402 since at least 2014." CP at 772. The trial court also concluded that U.S. Bank made this false assertion of ownership in reference to a pending purchase or sale. The pending purchase was U.S. Bank's purchase at the nonjudicial foreclosure sale. The court commented: "[d]ue to the Court's finding in Dalton M's favor on the claim of quieting title, but primarily on the claim of slander of title, the Court awards Dalton M its reasonable attorney fees and costs associated with trying to restore title." RP at 329.

15

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

The trial court entered lengthy findings of fact, on which we rely in part for our

recitation of facts, and conclusions of law. Key findings read:

> XXXIV. Also printed on May 15, 2015 was the Spokane County
> Assessor's Office parcel information listing James Fleck as owner of Parcel
> 9008 and Dalton M as owner of Parcel 0402. The document also provides
> Dalton M's address of 212 South McDonald Road, Spokane Valley, WA
> 99216.
> XXXV. On May 15, 2015, Ocwen forwarded the title report to its
> attorney, Robinson Tait.
> . . . .
> XLI. U.S. Bank then appointed North Cascade Title Services as
> successor trustee; on January 1, 2016 an Appointment of Successor Trustee
> was recorded with the Spokane County Auditor's Office. It appointed
> North Cascade Trustee Services as successor trustee to Pacific Northwest
> Title.
> . . . .
> XLIV. Once all corrections were made to the Deed of Trust
> assignment, U.S. Bank then directed North Cascade Trustee Services to sell
> Parcel 9008 and Parcel 0402 in accordance with the law and terms of the
> Deed of Trust.
> . . . .
> XLVII. As of March 1, 2016, Ocwen had received parcel
> information from the Spokane County Assessor's Office showing James
> Fleck was the owner of Parcel 9008 and Dalton M was the owner of Parcel
> 0402. The parcel information also provided an address for Dalton M of
> P.O. Box 141023, Spokane, WA 99214.
> . . . .
> LVIII. In late 2016 to early 2017 Mr. Faulkes became aware that
> U.S. Bank was listed as the owner of Parcel 0402. Since that time, Mr.
> Faulkes has been consistently attempting to correct the title to Parcel 0402.
> LIX. Many of Mr. Faulkes' attempts to correct title have been
> memorialized in email communications between he and U.S. Bank's then
> attorney, Robinson Tait.
> LX. As of November 14, 2019, the Spokane County Assessor's
> Office still listed U.S. Bank as the owner of Parcel 0402.
> LXI. As of the time of trial, U.S. Bank has not taken any affirmative
> steps to correct the inaccurate information provided to the Spokane County

16

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

> Auditor's Office as related to Parcel 0402. Rather, U.S. Bank has requested
> the Plaintiff take the steps necessary to correct the inaccuracies.
> . . . .
> LXIII. As of the time of trial, Plaintiff has incurred thousands of
> dollars in attorney's fees and costs in attempting to have the title to Parcel
> 0402 corrected.

CP at 768-71.

In its conclusions of law, some of which may be mixed findings and conclusions,

the superior court wrote:

> XI. U.S. Bank's claim of ownership was made in bad faith as the
> evidence shows U.S. Bank has been aware of Dalton M's interest in Parcel
> 0402 since at least 2014.
> XII. U.S. Bank maliciously published its false claim of ownership of
> Parcel 0402.
> . . . .
> XIV. The element of malice is met as the slanderous statement was
> not made in good faith.
> XV. U.S. Bank's false assertion of ownership was premised on their
> purchase of the property, thus satisfying the pending purchase or sale
> element.
> . . . .
> XXII. Due to this Court's finding, relative to the Slander of Title
> claim, the Court awards Dalton M its reasonable attorney's fees and costs
> associated with trying to restore title.

CP at 772-73. The superior court awarded no damages to Dalton M on its slander of title

action other than reasonable attorney fees.

Dalton M requested $82,086.27 in attorney fees and costs and submitted a

declaration showing the hours expended by counsel in the case. Dalton M excluded from

its request efforts spent on its Consumer Protection Act claim. U.S. Bank requested that

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

the trial court deny the award in its entirety, or, alternatively, award a total fee award of

$42,773.36. The trial court awarded Dalton M attorney fees and costs in the amount of

$81,673.98. The court entered an additional judgment against "Defendant U.S. Bank" for

this amount. The judgment summary listed the judgment debtor as "U.S. Bank National

Association," although the caption of the pleading read: "U.S. Bank National

Association, as Trustee." CP at 845.

In its complaint, Dalton M did not seek recovery of reasonable attorney fees and

costs on equitable grounds. After the parties filed their respective appellate briefs, this

court asked the parties to brief the following questions:

> 1. Whether Dalton M should be awarded reasonable attorney fees
> and costs on equitable grounds if this court affirms the trial court's finding
> that U.S. Bank engaged in bad faith conduct and regardless of whether this
> court affirms the granting of judgment in favor of Dalton M on its slander
> of title action?
> 2. Whether Dalton M should be awarded reasonable attorney fees
> and costs on equitable grounds for any other reason?

Letter from Court Clerk Tristen Worthen, Division III of the Washington State Court of

Appeals, No. 37448-3-III (Nov. 8, 2021). Each party complied.

## LAW AND ANALYSIS

U.S. Bank raises five arguments on appeal. First, the bankruptcy filing of North

Cascade Trustee Services stayed this case. Second, insufficient evidence supported

Dalton M's slander of title claim. Third, the trial court should have reformed the

trustee's deed. Fourth, the trial court erred in awarding Dalton M reasonable attorney

18

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

fees and costs when the limited liability company never pled a request for fees in its complaint. Fifth, assuming this court affirms the propriety of awarding some attorney fees and costs, the trial court awarded an unreasonable sum. U.S. Bank does not contend that the superior court erred when quieting title to Parcel 0402 in favor of Dalton M.

As part of its appeal, U.S. Bank assigns error to numerous findings of fact. We address whether sufficient evidence supports challenged findings when addressing the the bank's substantive arguments rather than addressing each challenged finding separately.

In a battle of footnotes, the parties debate the name of the defendant and the accurate identity of the defendant. We observe that Dalton M sued U.S. Bank National Association, as Trustee. We issue no ruling as to the proper nomenclature for the judgment debtor or the extent of the assets against which Dalton M may collect any judgment. We refer to the appellant as U.S. Bank only for shorthand purposes.

North Cascade Bankruptcy

*Issue 1: Was Dalton M's claim against U.S. Bank stayed because of the bankruptcy filing of North Cascade Trustee Services?*

*Answer 1: No.*

U.S. Bank contends that the bankruptcy filing of North Cascade in 2018 stayed this suit against the bank. Although neither party supplies this court any bankruptcy pleadings, Dalton M concedes that North Cascade filed bankruptcy. U.S. Bank did not

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

seek a stay before the trial court or by a separate motion before this court. The bank supplies no evidence that North Cascade remains under bankruptcy protection.

As a general rule, the bankruptcy automatic stay does not apply to proceedings against nondebtors. *Teachers Insurance and Annuity Association of America v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 4 (1st Cir. 1983). When, however, an identity between a debtor and a nondebtor exists such that a judgment against the nondebtor would be binding on the debtor, the debtor's protection must be extended to enjoin litigation against the nondebtor. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). U.S. Bank supplies no analysis as to whether any judgment against it would bind North Cascade other than to cite three decisions: *In re Metropolitan Mortgage & Securities Co.*, 325 B.R. 851 (Bankr. E.D. Wash. 2005); *Brunetti v. Reed*, 70 Wn. App. 180, 852 P.2d 1099 (1993); *Seattle-First National Bank v. Westwood Lumber, Inc.*, 59 Wn. App. 344, 796 P.2d 790 (1990). None help U.S. Bank.

In Spokane's traumatic bankruptcy, *In re Metropolitan Mortgage & Securities Co.*, 325 B.R. 851 (Bankr. E.D. Wash. 2005), the bankruptcy court imposed a stay on use of funds from a director's and officer's errors policy because the debtor bank purchased the policy such that the policy remained an asset of the bank. U.S. Bank and North Cascade lack any common funds or property interests. U.S. Bank has spent much effort in this proceeding attempting to distance itself from North Cascade.

20

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In *Brunetti v. Reed*, 70 Wn. App. 180 (1993), this court ruled that tort plaintiffs could proceed against debtors discharged in bankruptcy for purposes of recovering against the debtors' insurer. *Seattle-First National Bank v. Westwood Lumber*, 59 Wn. App. 344 (1990) concerned whether a plaintiff suing a debtor in bankruptcy could file a voluntary nonsuit. The plaintiff did not seek recovery against a non-bankruptcy debtor.

Slander of Title

U.S. Bank challenges the superior court's ruling that it slandered title. Slander of title consists of five elements:

> (1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss.

*Centurion Properties III, LLC v. Chicago Title Insurance Co.*, 186 Wn.2d 58, 80-81, 375 P.3d 651 (2016) (*quoting Rorvig v. Douglas*, 123 Wn.2d 854, 873 P.2d 492 (1994)). U.S. Bank argues that Dalton M supplied insufficient evidence to satisfy elements one, two, three, and five. If we were to address element one and the publication aspect of element two, we would hold that Dalton M satisfied these elements. We do not address these subjects, however, because we agree with U.S. Bank that insufficient evidence supports element three. We address the malicious feature of element two because of its relationship to Dalton M's claim for reasonable attorney fees.

*Issue 2: Did U.S. Bank publish malicious words?*

21

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Answer 2: Yes. More importantly, the facts show that U.S. Bank engaged in bad faith conduct.*

On appeal, U.S. Bank argues that, even if it falsely published a statement of ownership, no evidence supports the trial court's conclusion it did so with malice. In support of this argument, the bank contends that no evidence sustains a finding that it or its agents, Robinson Tait or Ocwen, possessed actual knowledge of the tax sale of Parcel 0402 or that the bank relied on North Cascade, who may have held knowledge, in bad faith. U.S. Bank argues that the evidence supports, at most, negligence.

Dalton M responds that a finding of maliciousness does not require that U.S. Bank possess actual knowledge of the tax sale. Instead, it argues that U.S. Bank's decision to foreclose on property, when it or its agents had documentation showing that it lacked any interest in the property, left U.S. Bank without a reasonable belief in the veracity of its claim and constitutes bad faith. U.S. Bank, according to Dalton M, also proceeded in bad faith when failing to send notice of the trustee's sale to Dalton M at the addresses given by the Spokane County Assessor's office and known by Ocwen.

The plaintiff satisfies the element of malice when the defendant publishes the slanderous statement in bad faith or lacks a reasonable belief in the statement's veracity. *Rorvig v. Douglas*, 123 Wn.2d 854, 860, 873 P.2d 492 (1994). A slander of title claim may not survive on negligence alone because, if simple negligence prevailed, a party claiming an erroneous but good faith interest in real property could not litigate his claim

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

without fear of being penalized in damages. *Centurion Properties III, LLC v. Chicago Title*, 186 Wn.2d 58, 81 (2016).

In the context of a slander of title action, the type of malice required is "legal malice," which does not mean hatred or hostility, but only an act performed with deliberateness and without reasonable cause. *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 332 (Tex. App. 1998). A party's lack of effort to uncover relevant facts presents evidence of reckless disregard. *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 333 (Tex. App. 1998). U.S. Bank, as a major bank and lender, had expertise in mortgages, deeds of trust, and review of title policies. A party's expertise can support a finding of malice. *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 332-33 (Tex. App. 1998). Malice may be inferred by the trier of fact from the evidence. *Lee and Mayfield, Inc. v. Lykowski House Moving Engineers, Inc.*, 489 N.E.2d 603, 608 (Ind. Ct. App. 1986).

In the context of defamation of product, a trier of fact may find actual malice if the defendant completely departed from the standards of investigation to which responsible publishers adhere. *Bose Corp. v. Consumers Union of U.S., Inc.*, 692 F.2d 189, 196-97 (1st Cir. 1982), *aff'd* 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984). In a defamation suit, the trier of fact may infer malice from circumstantial evidence, including a failure to properly investigate. *Duc Tan v. Le*, 177 Wn.2d 649, 669, 300 P.3d 356 (2013). In the context of a claim for malicious prosecution, the trier of fact may infer

23

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

malice from proof that the investigation or prosecution was undertaken with reckless disregard for the plaintiff's rights. *Youker v. Douglas County*, 162 Wn. App. 448, 464, 258 P.3d 60 (2011).

The trial court concluded that U.S. Bank published a claim of ownership maliciously, in bad faith, and without good faith. The court based this conclusion on evidence that U.S. Bank, at least through its agents if not directly, knew of Dalton M's interest in Parcel 0402 beginning in 2014. Overwhelming evidence supported the conclusions.

Ocwen Loan Servicing, the agent of U.S. Bank, over a period of two years repeatedly received title reports and records from the Spokane County Assessor's Office that listed Dalton M as the owner of Parcel 0402. The assessor's office parcel information included the accurate address of Dalton M. The title report package included the treasurer's deed issued to Mark and Tracy Faulkes. Ocwen shared the information with U.S. Bank's attorneys, Robinson Tait.

U.S. Bank emphasizes that, even if it knew Dalton M held an ownership interest in Parcel 0402, knowledge of this fact does not equate to knowledge that a tax sale had stripped U.S. Bank from its lien on Parcel 0402. The bank contends that a tax sale is unique in that it takes priority over former liens. *See In re Estate of Patton*, 1 Wn. App. 2d 342, 405 P.3d 205 (2017); *see also* RCW 84.60.010. If anything, this uniqueness harms U.S. Bank's position since the bank should have known a purchaser at the tax sale

24

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

gained a priority interest over the earlier deed of trust held by the bank. Regardless, with the information found in the title report, U.S. Bank or one of its agents needed to at least investigate the possible interest held by Dalton M. A party acts in bad faith when it ignores red flags of concern.

U.S. Bank also argues that it could reasonably rely on North Cascade as a foreclosing trustee to review the title for Parcel 0402. U.S. Bank contends that North Cascade owed it a fiduciary duty as a foreclosure trustee. *Cox v. Helenius*, 103 Wn.2d 383, 388-89, 693 P.2d 683 (1985); *Meyers Way Development Ltd. Partnership v. University Savings Bank*, 80 Wn. App. 655, 666, 910 P.2d 1308 (1996); *Koegel v. Prudential Mutual Savings Bank*, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988). Dalton M responds that North Cascade owed U.S. Bank no fiduciary duty and that U.S. Bank's reliance on North Cascade constituted bad faith. Regardless of any duty owed by North Cascade, U.S. Bank still owed an owner of property, on which it sought to foreclose, a duty to refrain from foreclosure. Any other party's duty toward the bank did not abrogate U.S. Bank's duty to Dalton M.

We also conclude that U.S. Bank continued to act in bad faith when refusing to release its interest in Parcel 0402 once Dalton M notified the bank of the cloud on the title. We analyze this extended continuity of bad faith when we examine an award of reasonable attorney fees.

25

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Issue 3: Did the trial court correctly conclude that Dalton M established the element of a pending sale of Parcel 0402?*

*Answer 3: No.*

U.S. Bank argues that the trial court misconstrued the third element of a slander of title claim. Under this element, a guilty party must publish false words with regard to a pending sale of property. Dalton M responds that slander resulting from U.S. Bank's improper sale and purchase at the trustee's sale suffices to meet the third element of a slander of title claim. We agree with U.S. Bank.

The third element of slander of title requires that a statement be made "with reference to some pending sale or purchase of property." *Rorvig v. Douglas*, 123 Wn.2d 854, 859 (1994); *Lee v. Maggard*, 197 Wash. 380, 382, 85 P.2d 654 (1938). Washington case law indicates that the harm that occurs to a pending sale or purchase as the result of a third party's actions gives rise to a slander of title claim. *Rorvig v. Douglas*, 123 Wn.2d 854, 861 (1994); *Clarkston Community Corporation v. Asotin County Port District*, 3 Wn. App. 1, 4, 472 P.2d 558 (1970).

As to this third element, the trial court deemed U.S. Bank's purchase at the trustee's sale as the qualifying pending sale or purchase. Nevertheless, the trustee's deed created the cloud to the title. All case law assumes that the pending sale accrues after the cloud was created not contemporaneously to the cloud being recorded. Dalton M fails to

26

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

forward evidence of the thwarting of any pending sale as a result of U.S. Bank's cloud on its title.

A controlling decision is *Clarkston Community Corporation v. Asotin County Port District*, 3 Wn. App. 1 (1970). Plaintiff Clarkston Community Corporation argued that the Asotin County Port District slandered its title to four parcels of land located in Asotin County after the Port District counsel wrote, in a letter to the Army Corps of Engineers, that title to the property may be disputed. A Corps representative responded by stating that the Corps had no purchase pending for the land. Another letter from the representative stated that the Corps did not anticipate beginning negotiations for the property until a later date. This court held that Clarkston Community Corporation failed to show a pending sale that adversely affected and harmed it.

Reformation

U.S. Bank contends that the trial court erred in concluding that it could not reform the legal description contained in the 2016 trustee's deed issued by North Cascade to the bank. Dalton M responds that U.S. Bank intended to foreclose on Parcel 0402 at the time of the foreclosure and neither party presented evidence of a scrivener's error or mutual mistake that would permit reformation.

Neither Dalton M nor U.S. Bank pled a cause of action for reformation. Nevertheless, U.S. Bank contends the parties litigated the case as if one or both of the

27

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

parties requested reformation particularly in light of a pretrial stipulation that read that

Dalton M and U.S. Bank agree that the court should grant reformation.

*Issue 4: Whether the trial court should have granted reformation because the parties litigated the legal theory?*

*Answer 4: We decline to address this question since the law does not support this relief under the undisputed circumstances.*

U.S. Bank argues that, under CR 15(b), it could amend its answer to request this remedy in part because the parties litigated the theory of relief. We ignore this argument because the trial court ruled that the facts did not support the remedy of reformation. We agree with the superior court. Therefore as established below, even if the trial court considered reformation to be pled by a party, the outcome would remain the same.

We recognize that Dalton M stipulated in a pretrial management report that the court should grant reformation. Nevertheless, U.S. Bank fails to cite any law that obligates the trial court to grant relief, on which the parties agree, when the law does not support this relief.

*Issue 5: Whether the facts presented at trial supported reformation of the trustee's deed?*

*Answer 5: No.*

U.S. Bank contends that the evidence supported reforming the legal description of the trustee's deed from North Cascade to itself such that the description would exclude

28

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

Parcel 0402. The court may reform a deed on the showing of a mutual mistake or a scrivener's error. *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 999 P.2d 54 (2000). Mutual mistake occurs when the parties maintain the same intention at the time of the transaction and the writing executed by them does not express that intention. *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843 (2000). A party seeking the remedy must show that the parties agreed to accomplish a certain objective and the instrument fails to execute their intention. *Wilhelm v. Beyersdorf*, 100 Wn. App. at 844. Mutual mistake must be shown by the party seeking reformation by clear, cogent, and convincing evidence of the mistake. *In re of Marriage of Schweitzer*, 132 Wn.2d 318, 327, 937 P.2d 1062 (1997). The relevant transaction for this appeal is the transfer of Parcel 9008 and Parcel 0402 to U.S. Bank by North Cascade at the time of the trustee's sale. The trustee's deed expressed the intention that North Cascade planned to convey both parcels. U.S. Bank had asked for the transfer of both parcels. Thus, no mutual mistake happened. A later discovery of a mistake does not show that, at the time of the transaction, the writing failed to comport with the parties' intent.

Attorney Fees

Because we reverse the ruling in favor of Dalton M on its slander of title cause of action, we cannot award reasonable attorney fees and costs under this theory. We know of no rule and Dalton M cites no case that permits an award when the plaintiff sustains less than all of the five elements of the cause of action.

29

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In its oral ruling, the trial court awarded reasonable attorney fees and costs in Dalton M's favor on the quiet title cause of action in addition to the claim of slander of title. Thus, we first analyze whether a judgment for quiet title justifies an award. We conclude reasonable attorney fees are not available for a successful quiet title action. The trial court found that U.S. Bank engaged in bad faith. Therefore, we thereafter explore the bad faith equitable exception to the American rule of attorney fees as an alternate basis for fees. Because this court on its own initiative raised the equitable exception, we also ask whether the court holds authority to raise a theory on its own.

*Issue 6: Whether Dalton M may recover reasonable attorney fees and costs on its successful claim for quiet title?*

*Answer 6: No.*

No Washington statute exists to enable a party to recover reasonable attorney fees and costs in a quiet title action. All Washington reported decisions addressing the subject have held that the prevailing party in such an action may not recover reasonable fees. *Colwell v. Etzell*, 119 Wn. App. 432, 442-43, 81 P.3d 895 (2003); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 896, 801 P.2d 1022 (1990); *Magart v. Fierce*, 35 Wn. App. 264, 268, 666 P.2d 386 (1983).

Dalton M cites an unpublished opinion of Division II of this court to support the proposition that the prevailing plaintiff in a quiet title action may recover reasonable attorney fees. *Gunn v. Riely*, 200 Wn. App. 1039 (2017). The *Gunn* court based the

30

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

ruling on the equitable exception to the American rule of attorney fees. Although the court noted the prelitigation bad faith misconduct of the defendant, the court also observed that a quiet title action is one in equity and thus qualifies for an award. The court erred in reasoning that attorney fees were recoverable in any equitable action. No other court has expanded the exception this far.

 *Issue 7: Whether this court may or should address a potential award for reasonable attorney fees and costs under the equity exception to the American rule of attorney fees despite Dalton M omitting a request for fees under this basis and despite the initial briefs not addressing this question?*

 *Answer 7: Yes.*

 Dalton M has never asked for an award of fees under the equitable exception to the American rule denying fees to the prevailing party. This court ordinarily decides appeals based only on the theories and arguments asserted by the parties before the superior court and in their appeal briefs. RAP 2.5(a); *Obert v. Environmental Research & Development Corp.*, 112 Wn.2d 323, 333, 771 P.2d 340 (1989). Still this court has the authority to perform those acts proper to secure a fair and orderly review of the appeal and to waive the rules of appellate procedure when necessary to serve the ends of justice. RAP 1.2(c), 7.3; *State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999).

 RAP 12.1 declares:

31

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

> (b) Issues Raised by the Court. If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

(Boldface omitted.) RAP 12.1(b) means exactly what it says: this court may raise issues sua sponte and may rest its decision thereon. *Greengo v. Public Employees Mutual Insurance Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998); *Obert v. Environmental Research & Development Corp.*, 112 Wn.2d 323, 333 (1989); *Alverado v. Washington Public Power Supply System*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988). Thus a Washington appellate court may raise an issue sua sponte and rest its decision on that issue. RAP 12.1(b); *Greengo v. Public Employees Mutual Insurance Co.*, 135 Wn.2d 799, 813 (1998). A Washington appellate court possesses inherent discretionary authority to reach an issue not briefed by parties if the issue is necessary for decision. *Keodalah v. Allstate Insurance Co.*, 194 Wn.2d 339, 346 n.4, 449 P.3d 1040 (2019); *Quinault Indian Nation v. Imperium Terminal Services, LLC*, 187 Wn.2d 460, 477, 387 P.3d 670 (2017). Courts frequently decide crucial issues that the parties fail to present. *Silber v. United States*, 370 U.S. 717, 717-18, 82 S. Ct. 1287, 8 L. Ed. 2d 798 (1962); *Boynton v. Commonwealth of Virginia*, 364 U.S. 454, 457, 81 S. Ct. 182, 5 L. Ed. 2d 206 (1960); *Hall v. American National Plastics, Inc.*, 73 Wn.2d 203, 205, 437 P.2d 693 (1968).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

One factor that we consider in determining whether to exercise the authority to raise an issue is whether the issue is a purely legal one. *City of Seattle v. McCready*, 123 Wn.2d 260, 269, 868 P.2d 134 (1994). Generally, we request additional briefing to resolve a question raised by this court. RAP 12.1(b); *State v. Aho*, 137 Wn.2d 736, 741 (1999).

U.S. Bank cites three cases for the proposition that this court has no authority to impose an award of reasonable attorney fees and costs on a basis not considered by the superior court. *King County v. Guardian Casualty & Guaranty Co.*, 103 Wash. 509, 175 P. 166 (1918); *In re Marriage of Freeman*, 146 Wn. App. 250, 259, 192 P.3d 369 (2008), *aff'd* 169 Wn.2d 664, 239 P.3d 557 (2010); *Bierce v. Grubbs*, 84 Wn. App. 640, 645, 929 P.2d 1142 (1997). In each of these decisions, the reviewing court declined to address a new theory for an award of fees, but no decision reads that the reviewing court cannot exercise its discretion if it so chooses. The Supreme Court decided *King County v. Guardian Casualty & Guaranty Co.*, on which the other decisions rely, before adoption of RAP 12.1(b). Nothing in RAP 12.1(b) limits the new issues on which an appellate court may accept review, let alone any language precluding review of a new ground for reasonable attorney fees and costs.

Because of the bad faith conduct of U.S. Bank both before foreclosing on Parcel 0402 and after being contacted by Mark Faulkes, we conclude that this court, in the interest of securing justice, should fully explore other grounds, on which Dalton M might

33

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

secure an award of reasonable attorney fees and costs other than its slander of title cause

of action.  Facts relevant to this dispute are crucial when deciding whether to grant fees

on equitable grounds, but the superior court has already determined those facts.  The

question becomes one only of law for this court.  We asked for and received additional

briefing from U.S. Bank and Dalton M on this new question.

*Issue 8: Whether this court should award Dalton M reasonable attorney fees and*

*costs on equitable grounds?*

*Answer 8: Yes.*

We now arrive at the most difficult question posed by this appeal.  The question of

an award of attorney fees on equitable grounds takes us on a journey through the

American rule denying fees, the exceptions to the American rule, the subcategories and

subsubclassifications of the equitable exception, the distinction between fees as damages

or as costs, and the difference between bad faith that gives rise to the cause of action and

bad faith after a dispute arises.  We analyze both state and federal law to arrive at a just

and correct decision.

The United States Supreme Court, in 1796, wrote, in an epigrammatic opinion:

> [A] charge of 1600 dollars for counsel's fees in the courts below,
> had been allowed; to which Coxe objected; and Ingersoll contended that it
> might fairly be included under the idea of damages.  But
> BY THE COURT:—We do not think that this charge ought to be
> allowed.  The general practice of the United States is in opposition to it;
> and even if that practice were not strictly correct in principle, it is entitled to
> the respect of the court, till it is changed, or modified, by statute.

34

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 306, 1 L. Ed. 613 (1796).  Thus, began the American rule that requires each party to bear its own litigation costs and fees.  *King County v. Vinci Construction Grands Projects/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 637, 398 P.3d 1093 (2017).

No known reason other than accident supported the adoption of the American rule by the United States Supreme Court in 1796, which curiously conflicts with the English common law, the foundation of American law.  English courts have awarded counsel fees to the prevailing party since the thirteenth century.  William B. Stoebuck, *Counsel Fees Included in Costs: A Logical Development*, 38 U. COLO. L. REV. 202, 204-07 (1966).  Despite recurrent scholarly criticism of this American rule, modern American courts, including the Washington Supreme Court, perpetuate the rule.  When asked to abrogate the American rule, courts repeatedly decline because of the notion that the legislature should adopt any change that brings social and political consequences.  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 250, 262, 271, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980); *Greenbank Beach & Boat Club, Inc. v. Bunney*, 168 Wn. App. 517, 525, 280 P.3d 1133 (2012).

The American rule recognizes that the uncertainty of litigation should not result in penalizing one for prosecuting or defending a lawsuit.  *Fleischmann Distilling Corp. v.*

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Maier Brewing Co.*, 386 U.S. 714, 718, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967).  The poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' expensive counsel.  *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967); *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 436, 423 P.3d 223 (2018), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019).  The American rule promotes open access to the legal system.  *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1309 (2d Cir. 1973)

Despite its stated goal, the American rule also causes harm.  The rule may result in a plaintiff, who prevails in litigation, gaining only a pyrrhic victory when it receives a negative net recovery after expenses of litigation.  Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. REV. 613, 616 (1983).

Like most rules, the American rule of attorney fees has exceptions.  Under Washington law, and likely universally recognized in all American jurisdictions, a court may award fees as part of the costs of litigation on a contractual, statutory, or recognized equitable basis.  *Cosmopolitan Engineering Group, Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 297, 149 P.3d 666 (2006).  An equitable basis fits Dalton M's circumstances.  In *Public Utility District No. 1 of Snohomish County v. Kottsick*, 86 Wn.2d 388, 545 P.2d 1 (1976), the Supreme Court catalogued four equitable grounds for an award of fees: bad faith conduct of the losing party, preservation of a common fund, protection of

36

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

constitutional principles, and private attorney general actions.  The common fund

exception does not aptly match as an exception to the American rule since the losing

party does not pay the winning party's fee, but rather other parties benefited by an award

must share in payment of the plaintiff's fees.  We focus on the bad faith exception.

In *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 113, 111 P.2d 612 (1941),

the Washington Supreme Court first indicated that fees might be awarded depending on

the justice of the cause or the facts and circumstances of the particular case.

Subsequently, the state high court relied on this language for the proposition that

fees could be awarded if the prevailing party proved the opposing party acted with bad

faith or wantonness.  *Clark v. Washington Horse Racing Commission*, 106 Wn.2d 84, 93,

720 P.2d 831 (1986); *ASARCO, Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 716, 601

P.2d 501 (1979); *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976); *Public

Utility District No. 1 of Snohomish County v. Kottsick*, 86 Wn.2d 388, 390 (1976).  This

appeals court used the term "oppressive behavior" in place of "bad faith conduct" as the

basis for an equitable award.  *Snyder v. Tompkins*, 20 Wn. App. 167, 174-75, 579 P.2d

994 (1978).

According to the United States Supreme Court and the Washington Supreme

Court, a court's inherent equitable powers authorize the award of attorney fees in cases of

bad faith.  *Hall v. Cole*, 412 U.S. 1, 4-5, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973); *In re

Recall of Pearsall-Stipek*, 136 Wn.2d 255, 266-67, 961 P.2d 343 (1998); *Weiss v. Bruno*,

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

83 Wn.2d 911, 914, 523 P.2d 915 (1974). Compensating one subjected to bad faith

litigation arises from the inherent, supervisory, and equitable power of the courts.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

The Washington Supreme Court once wrote that, although courts occasionally

mention bad faith conduct as a basis for a fee award, no Evergreen State court has

granted fees on this basis. *Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803

(1984), *abrogated on other grounds by Blue Sky Advocates v. State*, 107 Wn.2d 112, 727

P.2d 644 (1986). We question this statement, although, even if true, the comment does

not rule out bad faith as a permissible ground and presumably one Washington court can

finally grant fees on this equitable basis. We are that court.

The law divides the bad faith equitable exception even further into three

subcategories. One Washington decision identifies three forms of bad faith: (1)

prelitigation misconduct; (2) procedural bad faith; and (3) substantive bad faith.

*Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 927, 982 P.2d 131

(1999). Prelitigation misconduct refers to obdurate or obstinate conduct that necessitates

legal action to enforce a clearly valid claim or right. *Rogerson Hiller Corp. v. Port of

Port Angeles*, 96 Wn. App. 918, 927 (1999). Procedural bad faith covers dilatory and

obstreperous conduct during the course of litigation. *Gabelein v. Diking District No. 1 of

Island County*, 182 Wn. App. 217, 237, 328 P.3d 1008 (2014); *Rogerson Hiller Corp. v.

Port of Port Angeles*, 96 Wn. App. at 928. Substantive bad faith represents filing a

38

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

frivolous lawsuit or asserting a frivolous defense with the intention to harass. *In re Recall Pearsall-Stipek*, 136 Wn.2d 255, 267 (1998); *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. at 929. This appeal concerns prelitigation misconduct.

Language from this court's opinions in marital dissolution appeals confirms the availability of reasonable attorney fees for both prelitigation and litigation bad faith conduct. A court award may be justified on a recognized equitable ground based on the appellant's intransigence which forced the respondent to go to court to obtain the relief granted below. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992); *Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969). Intransigence includes "'foot-dragging'" and "'obstruction[ ].'" *Eide v. Eide*, 1 Wn. App. 440, 445 (1969). Intransigence occurs when a party forces another party to come to court to enforce clear legal rights. *In re Marriage of Greenlee*, 65 Wn. App. 703, 709 (1992). When intransigence occurs, the financial need of the other party lacks relevance. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). No sound reason exists to distinguish civil cases from marital dissolution cases for purposes of an award of fees based on prelitigation bad faith.

Jurisdictions disagree as to when prelitigation bad faith merits an award of reasonable attorney fees. Some courts further divide prelitigation conduct into two subsubclassifications: (1) bad faith misconduct that forms the facts behind the cause of action on which the plaintiff sues, or substantive bad faith, and (2) an unreasonable

39

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

refusal to recognize the plaintiff's rights such that the plaintiff must sue to enforce a clear valid claim. *Shimman v. International Union of Operating Engineers, Local 18*, 744 F.2d 1226 (6th Cir. 1984). In this setting, the term "substantive" bad faith assumes a different meaning from the third category of bad faith of bringing a frivolous suit or defense as mentioned in *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 929 (1999).

Some courts only award fees under the second subsubcategory of prelitigation bad faith. *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 228 (Del. 2005); *Shimman v. International Union of Operating Engineers, Local 18*, 744 F.2d 1226 (6th Cir. 1984); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). Other courts appear to award fees under both categories of prelitigation bad faith. *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018); *McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir. 1983); *Kerin v. U.S. Postal Service*, 218 F.3d 185, 195 (2d Cir. 2000); *Richardson v. Communication Workers of America, AFL-CIO*, 530 F.2d 126, 132 (8th Cir. 1976); *Rolax v. Atlantic Coast Line Railroad Co.*, 186 F.2d 473 (4th Cir. 1951); *Schlein v. Smith*, 160 F.2d 22 (D.C. Cir. 1947); *Sierra Club v. U.S. Army Corps of Engineers*, 590 F. Supp. 1509, 1514 (S.D.N.Y. 1984), *aff'd in part, rev'd in part on other grounds*, 776 F.2d 383 (2d Cir. 1985).

Commentators and federal decisions promote fees for prelitigation bad faith when a defendant causes unnecessary litigation by unjustifiably resisting an indisputable claim.

40

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Haycroft v. Hollenbach*, 606 F.2d 128, 133 (6th Cir. 1979). Clearly established rights

should be respected and accorded without the intervention of the court system. Jane P.

Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. REV. 613,

633 (1983). When the defendant resists the plaintiff's clearly established right without

justification for doing so, its obstinacy gives the plaintiff no choice but to seek judicial

assistance in enforcing his right. Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of*

*the Judicial System*, 61 N.C. L. REV. 613, 632 (1983). In these circumstances, the

defendant creates unwarranted expenses not only for his opponent but for the public and

the courts. *Haycroft v. Hollenbach*, 606 F.2d 128, 133 (6th Cir. 1979). Thus, an award

under these circumstances vindicates the court's integrity. The United States Supreme

Court has likened such an award to a remedial fine imposed for civil contempt. *Hutto v.*

*Finney*, 437 U.S. 678, 691, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978). The award

incentivizes the defendant to act properly and promptly in the future so that litigation will

not be needed. *Hutto v. Finney*, 437 U.S. 678, 691 (1978).

An illustrative decision is *Vaughan v. Atkinson*, 369 U.S. 527, 82 S. Ct. 997, 8 L.

Ed. 2d 88 (1962), which began the equitable exception for an award of reasonable

attorney fees and costs in federal court. Clifford Vaughan, a seaman, brought suit in

admiralty against his former employer when the employer failed without justification to

respond to his claim for maintenance and cure. Vaughan sent the employer medical

records establishing his illness and need for medical care. The Supreme Court

41

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

emphasized the role that the employer's bad faith played in the award for fees. Because

of the employer's callous attitude and recalcitrance in neither admitting nor denying the

claim, it forced Vaughan to hire an attorney to obtain relief owed to him under the law.

Although couched in terms of an award for compensatory damages, later United

States Supreme Court decisions recognize *Vaughan v. Atkinson* as the precursor of the

exception, for bad faith conduct of the defendant, to the American rule. *Summit Valley*

*Industries v. Local 112, United Brotherhood of Carpenters and Joiners of America*, 456

U.S. 717, 721, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982); *Alyeska Pipeline Service Co. v.*

*Wilderness Society*, 421 U.S. 240, 259 (1975); *F.D. Rich Co. v. United States ex rel.*

*Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S. Ct. 2157, 40 L. Ed. 2d 703 (1974); *Hall*

*v. Cole*, 412 U.S. 1, 5 (1973); *Newman v. Piggie Park Enterprises*,  390 U.S. 400, 402

n.4, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968).  This recognition illustrates the uselessness

between distinguishing between attorney fees as damages and as costs, a distinction made

by some courts.

Having reviewed federal and other state decisions on prelitigation bad faith, we

turn now to Washington law.  We must wrestle with two Washington decisions that deny

recovery of attorney fees for prelitigation bad faith.  Neither decision discerned a

difference between bad faith conduct creating the cause of action and conduct rejecting

an indisputable claim.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 438 (2018), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019), the Washington Supreme Court faced the question of whether, in a tortious interference claim, an aggrieved party can recover "prelitigation, administrative fora attorney fees" intentionally caused by the tortfeasor. A jury ruled that the county and private citizens interfered in Maytown's development rights when the county handled a special use permit application to mine gravel. Maytown sought recovery of reasonable attorney fees and costs incurred during the abusive administrative process as both damages attendant to its tortious interference claim and as costs under the bad faith exception to the American rule. The court answered that prelitigation attorney fees could be recovered for successful abuse of process claims, but Maytown had not alleged this cause of action. Reasonable attorney fees and costs were not recoverable as damages in a tortious interference cause of action. In turn, the Supreme Court also denied reasonable attorney fees under the bad faith exception to the American rule.

A broad reading of *Maytown Sand & Gravel, LLC v. Thurston County* suggests that a Washington plaintiff can never recover reasonable attorney fees for the prelitigation bad faith of the defendant. A narrow reading of *Maytown Sand & Gravel, LLC* leads to the principle that a plaintiff cannot recover reasonable attorney fees for prelitigation bad faith if the bad faith occurred during the administrative process.

43

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

The Washington Supreme Court, in *Maytown Sand & Gravel, LLC*, first wrote

comments that intimate its holding only precludes reasonable attorney fees incurred

during an administrative process and that reasonable attorney fees remain available for

other prelitigation bad faith.  The court wrote:

> Whether attorney fees should be granted under the bad faith exception depends on " ' ["]the justice of the cause or the facts and circumstances of the particular case.["] ' "  An award of attorney fees is proper under the bad faith exception when the fees were incurred as a result of the "intentional and calculated action" of the defendant that "[left] the plaintiff with only one course of action: that is, litigation."  In other words, where "the defendants actually know their conduct forces the plaintiff to litigate" and the ability of the plaintiffs to prove actual damages may be difficult, an award for attorney fees may be granted.  "Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant."
>
> But we have never applied the bad faith exception to *prelitigation administrative forum* attorney fees.  Nor can we find any other jurisdiction that has applied the bad faith exception to that context.

*Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d at 442-43 (citations

omitted).  Immediately thereafter, the state Supreme Court continued the same paragraph

with language that hints fees for prelitigation bad faith may not be recovered under any

circumstances:

> In fact, our research shows that all jurisdictions that have considered whether the bad faith exception to the American rule extends to recovery of prelitigation attorney fees have ruled that the answer is no.  *E.g.*, *Ring v. Carriage House Condo. Owners' Ass'n*, 2014 VT 127, 198 Vt. 109, 125, 112 A.3d 754; *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir. 1997); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 73-74, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (Kennedy, J., dissenting, joined by Rehnquist, C.J., and Souter, J.), *Chambers*, 501 U.S.

44

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

> at 60, 111 S. Ct. 2123 (Scalia, J., dissenting). They hold that to the extent
> such prelitigation attorney fees are recoverable, they are recoverable only
> as *damages* under some type of abuse of civil proceedings claim, not
> as *costs* or *sanctions* under the bad faith exception.
>
> We agree. The bad faith exception to the American rule arises out of
> a court's equitable power to regulate and manage the affairs of the court
> and the parties before it. *See Chambers*, 501 U.S. at 46, 111 S. Ct. 2123.
> Sanctioning parties for prelitigation conduct that occurred *before* the court
> was involved and *before* litigation was initiated exceeds the scope of that
> authority. Compensating aggrieved parties for harm caused by malicious,
> prelitigation conduct fits more naturally within the meaning of damages and
> is therefore limited to that context. *Ring*, 198 Vt. at 125, 112 A.3d 754. As
> discussed above, Washington limits the situations in which such
> prelitigation attorney fees can be recovered as damages, and those
> situations do not include the tortious interference claims raised in this case.

*Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d at 443. Finally, the

Supreme Court returned to language that suggests fees for prelitigation bad faith are

available, but in limited circumstances.

> This <u>limit </u>on *prelitigation* attorney fees does not, however, affect
> Maytown's request for *appellate* attorney fees.

*Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d at 443 (underscoring

added). "This limit" may refer only to fees incurred in an administrative forum.

Division I of this court, preceding *Maytown Sand & Gravel, LLC v. Thurston*

*County*, denied fees for prelitigation substantive bad faith conduct in *Greenbank Beach &*

*Boat Club, Inc. v. Bunney*, 168 Wn. App. 517 (2012). Appellants Dallas and Marylou

Bunney built a home that exceeded the height limitation of a restrictive covenant. In a

suit brought by the homeowners association, the trial court ordered the residence be

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

modified. The court also awarded attorney fees, while concluding that the Bunneys acted in bad faith when they knowingly built a nonconforming home. This court reversed the award of attorney fees on the theory that prelitigation bad faith did not qualify as an equitable basis for an award of attorney fees when the actions found to be taken in bad faith did not pose a threat to the authority of the court.

Division I, in *Greenbank Beach & Boat Club*, 165 Wn. App. at 525 (2012) noted that this court must exercise inherent powers with restraint and discretion because the powers are "'shielded from direct democratic controls.'" (Citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)). Also, according to Division I, an award of attorney fees based on bad faith in the act underlying the substantive claim would conflict with the rationale behind the American rule regarding attorney fees. This latter reasoning would not preclude recovery of fees because of wrongful denial of a claim after the cause of action accrued.

We must decide to what extent we should follow the Supreme Court's decision in *Maytown Sand & Gravel, LLC v. Thurston County* and Division I of the Court of Appeals' opinion in *Greenbank Beach & Boat Club, Inc. v. Bunney*. Although we respectfully consider opinions from other Court of Appeals divisions, stare decisis of other Court of Appeals opinions does not apply to us. *In re Personal Restraint of Arnold*, 190 Wn.2d 136, 148, 410 P.3d 1133 (2018). But because we are subordinate and subservient to the Washington Supreme Court, we must respect *Maytown Sand & Gravel,*

46

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*LLC v. Thurston County*.  Nevertheless, neither case involves an express request for fees

because of an obstinate refusal to respect a valid claim that forced the plaintiff to file suit.

To further analyze the Supreme Court decision in *Maytown Sand & Gravel, LLC*

*v. Thurston County*, we explore the three foreign cases cited by the court as either

standing for the rule that prelitigation misconduct is never a basis for an award of fees or

fees incurred in an abusive administrative process are not recoverable.  *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 73-74, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (Kennedy J.

dissenting joined by Rehnquist, C.J. and Souter, J.); *Lamb Engineering & Construction*

*Co. v. Nebraska Public Power District*, 103 F.3d 1422, 1435 (8th Cir. 1997); *Ring v.*

*Carriage House Condominium Owners' Association*, 2014 VT 127, 198 Vt. 109, 112

A.3d 754.

We note that the Washington Supreme Court cited to dissenting opinions, not the

majority opinion, in *Chambers v. NASCO, Inc.*  The majority of the high Court, in

*Chambers*, explored the inherent power of a federal court to sanction a litigant for bad

faith conduct.  Russell Chambers entered an agreement with NASCO to sell a television

station.  Before closing the sale, Chambers changed his mind and asked NASCO to

rescind the agreement.  NASCO refused.  Chambers then engaged in extraordinary

conduct both before and after litigation to thwart NASCO's purchase of the station.

When NASCO gave presuit notice to Chambers of the intent to obtain a temporary

restraining order in United States District Court, Chambers transferred the real estate of

47

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

the television station and other assets to a trust established by him.  In defiance of a later temporary injunction, Chambers refused to allow NASCO to inspect the station's business records.  During the course of the litigation, Chambers forwarded a series of meritless motions.  Finally, on the eve of trial, Chambers stipulated to the enforceability of the sales agreement.

In *Chambers v. NASCO, Inc.*, the district court granted NASCO reasonable attorney fees for the bad faith conduct of Russell Chambers despite finding that CR 11 did not apply.  On appeal, the Supreme Court noted that some of the conduct of Chambers violated FED. R. CIV. P. 11 and a related federal statute, but the Court ruled that the district court could exercise the court's inherent authority to award attorney fees for bad faith conduct of a litigant outside the confines of the civil rule and the statute.  Because of the potency of inherent powers, a court should exercise the power with restraint and discretion.  Still, because a court can dismiss a lawsuit for an abuse of process, the court holds power to award a lesser sanction of fees.  The inherent power extended to a full range of litigation abuse and obstinancy.

The United States Supreme Court, in *Chambers v. NASCO, Inc.*, did not address whether the district court could award fees against Russell Chambers for his conduct relating to the underlying breach of contract claim.  Instead, the Court observed that Chambers perpetrated a fraud on the court with the bad faith he displayed toward his adversary and the court throughout the litigation.  The trial court was not limited to

48

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

sanctioning conduct inside the courtroom. The district court held discretion to award all fees and costs incurred by NASCO. We note that some of the bad faith conduct of Chambers occurred before litigation when Chambers transferred the property of the television station. Chambers' obstinate refusal to honor the sales contract also necessitated a lawsuit. *Chambers v. NASCO* does not preclude a trial court from awarding fees for prelitigation bad faith, let alone bad faith during an administrative process, as suggested in *Maytown Sand & Gravel, LLC v. Thurston County*.

In *Lamb Engineering & Construction Co. v. Nebraska Public Power District*, 103 F.3d 1422 (8th Cir. 1997), a state power agency appealed a judgment awarded against it to Lamb Engineering for breach of contract. The federal district court also awarded Lamb Engineering $277,649.50 in attorney fees on the ground that the power district administered the construction contract in bad faith. The appeals court addressed whether the inherent power of the federal court permitted such an award. The court adopted a rule that the trial court may consider conduct both during and prior to the litigation, although the award may not be based on the conduct that led to the substantive claim. Thus, the court reserved the inherent power to award attorney fees for bad faith based on the defendant's refusal to recognize the opponent's clear legal rights and necessitating an action to be filed. The appeals court reversed the grant of fees because the power district's bad faith concerned the underlying substantive claim of breach of contract.

49

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

In *Ring v. Carriage House Condominium Owners' Association*, 112 A.3d 754, David Ring, a condominium owner, alleged that a condominium association and its members violated a settlement agreement concerning renovation of his condominium unit. After prevailing, Ring requested recovery of reasonable attorney fees pursuant to the settlement agreement that afforded the prevailing party fees. The trial court ruled that Ring could only recover fees incurred within the context of litigation. Ring incurred other fees in connection with responding to the condominium association's letter to city authorities accusing Ring of code violations and in responding to the condominium association's petition to state authorities to revoke Ring's professional engineering license. With scant analysis, the Vermont Supreme Court affirmed the trial court's partial denial of fees to Ring. The court reasoned that fees resulting from breach of the settlement agreement and paid before litigation were in the nature of damages that should have been proved during trial. The Vermont Supreme Court did not rule that prelitigation bad faith could not be the cause of an award of reasonable attorney fees. Although Ring may have been involved in an administrative process before the city and the state licensing agency, the Vermont court did not mention any limitation to an award for fees incurred during the process.

We return to the Washington decisions: *Maytown Sand & Gravel, LLC v. Thurston County* and *Greenbank Beach & Boat Club, Inc. v. Bunney*. The Supreme Court, in *Maytown*, followed precedent that did not support its narrow ruling denying fees for work

50

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

in representing the injured party in a prelitigation, administrative forum. The Supreme

Court never expressly held that a plaintiff could not recover prelitigation or postlitigation

fees resulting from the defendant's prelitigation obstinate refusal to honor a valid claim

and thereby force the plaintiff to file suit. Every court addressing this latter situation has

awarded fees.

The Court of Appeals ruling in *Greenbank Beach & Boat Club, Inc.* conflicts with

Washington principles of law, the American prevailing view, and reason. The

*Greenbank Beach & Boat Club, Inc.* court expressed concern about courts usurping the

state legislature's role by granting fees. Nevertheless, Washington courts have awarded

reasonable attorney fees and costs to the winning plaintiff in situations not authorized by

the legislature. For example, the Washington Supreme Court granted the prevailing

plaintiff in a slander of title action an award of fees without democratic authorization

from the legislature. *Rorvig v. Douglas*, 123 Wn.2d 854 (1994). Dalton M's cause of

action for quiet title echoed his cause of action for slander of title.

The Court of Appeals in *Greenbank Beach & Boat Club, Inc.* also suggested that

an award of fees for bad faith should be limited to conduct that threatens the authority of

the court. Nevertheless, prelitigation obstinate misconduct that forces a plaintiff to go to

court wastes judicial resources. *Forbes v. American Building Maintenance Co.*, 148 Wn.

App. 273, 301, 198 P.3d 1042 (2009), *aff'd in part, rev'd in part*, 170 Wn.2d 157, 240

P.3d 790 (2010); Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial*

51

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*System*, 61 N.C. L. REV. 613, 632 (1983). In these circumstances, the defendant creates

unwarranted expenses not only for his opponent but for the public and the courts.

*Haycroft v. Hollenbach*, 606 F.2d 128, 133 (6th Cir. 1979). An award under these

circumstances vindicates the court's integrity and functions as a remedial fine imposed

for civil contempt. *Hutto v. Finney*, 437 U.S. 678, 691 (1978).

The American rule seeks to promote the cause of the poor, who might be unjustly

discouraged from instituting actions to vindicate their rights if the penalty for losing

included the fees of their opponents' counsel. *Fleischmann Distilling Corp. v. Maier*

*Brewing Co.*, 386 U.S. 714, 718 (1967). This rationale does not apply when the fee

shifting rule operates only against one side. The cause of the poor is advanced, not

hindered, by a ruling in favor of Dalton M. In *Vaughan v. Atkinson*, the court, when

awarding the seaman reasonable attorney fees for suit caused by obstinate conduct of a

shipowner, recognized that seamen, as a class, are poor, friendless, and improvident.

In *Maytown Sand & Gravel, LLC v. Thurston County*, the Washington Supreme

Court distinguished between attorney fees as an award of damages and attorney fees as an

award of costs. This distinction lacks any practical difference. The plaintiff wants and

deserves his fees to be paid by the obstreperous defendant. The plaintiff does not care if

the court classifies the award as damages or costs. Later United States Supreme Court

decisions considering *Vaughan v. Atkinson*, 369 U.S. 527 (1962) as the precursor for the

equitable exception to the American rule, despite Vaughan being awarded fees as

52

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

damages, illustrates the uselessness of differentiating between fees as costs and fees as

damages. Whereas courts resist abrogating the American rule of attorney fees, a decision

awarding fees for obstreperous prelitigation conduct is well established in the law.

After reviewing *Maytown Sand & Gravel, LLC v. Thurston County*, the decisions

on which the Supreme Court relied in *Maytown*, the prevailing American view on fees for

prelitigation bad faith, and the policies behind denying or awarding reasonable attorney

fees in various situations, we conclude that the Washington Supreme Court, if addressing

the question for the first time, would hold that a plaintiff may recover fees incurred

because of the defendant's prelitigation bad faith refusal to recognize the plaintiff's

indisputable claim and forcing the plaintiff to file suit.

Although we recognize that the plaintiff may not, without more, recover attorney

fees in a quiet title action, the reasoning behind two Washington decisions indirectly

support recovery of fees for Dalton M for purposes of quieting title whether or not U.S.

Bank engaged in bad faith. In *Rorvig v. Douglas*, 123 Wn.2d 854 (1994), the trial court

denied Michael and Pam Rorvig recovery of the legal expenses incurred in the quiet title

portion of their successful slander of title action. The Supreme Court reversed and held

that damages for slander of title include attorney fees. The court analogized slander of

title actions to actions for malicious prosecution, wrongful attachment, and wrongful

garnishment actions, wherein the court had already ruled that a successful claimant may

53

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

recover reasonable attorney fees as damages. In all three of the other causes of action, the defendant typically knows that it forces the plaintiff to litigate.

In *City of Seattle v. McCready*, 131 Wn.2d 266, 275, 931 P.2d 156 (1997), the Supreme Court recognized that fees are awarded in wrongful injunction, wrongful garnishment, and wrongful attachment actions because the defendant's conduct precludes the plaintiff from activities. A quiet title action is brought because the cloud on the title precludes the plaintiff from selling its land.

U.S. Bank engaged in two categories of bad faith. As noted in our analysis of malice for purposes of a slander of title cause of action, U.S. Bank engaged in bad faith when foreclosing on Dalton M's parcel. This bad faith gave rise to the substantive claim for quiet title. But the bank's bad faith extended beyond creating the substantive claim and into its failure to clear title for Dalton M once it knew of the cloud.

U.S. Bank engaged in bad faith before litigation and after the substantive claim arose. The bank diddled and dawdled when writing to Mark Faulkes that it was taking steps to remove the cloud on Parcel 0402's title. The evidence shows that U.S. Bank took no steps, let alone reasonable steps, to clear title. Even after Dalton M filed suit, U.S. Bank took no steps to correct the cloud on Dalton M's title. Dalton M suffers unfairness if it bears the costs of an attorney and litigation to correct a problem that U.S. Bank insisted it was correcting, but never did.

54

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

Dalton M possessed an undisputable right to clear title, while U.S. Bank forced Dalton M to come to court to clear title. In entreaties from Dalton M leading to the lawsuit, U.S. Bank never disputed that it should lift the cloud to title on Parcel 0402. During closing at trial, U.S. Bank insisted that it never opposed Dalton M gaining a quiet title order. Nevertheless, its answer denied that Dalton M was entitled to any relief, and the bank never filed a pleading before trial conceding that title belonged solely to Dalton M. Like Russell Chambers forcing NASCO to file suit, U.S. Bank forced Dalton M to file suit to enforce its rights only to concede at trial that Dalton M was entitled to relief.

The superior court found U.S. Bank to have engaged in bad faith when filing the trustee's deed. The superior court did not expressly find that the bank engaged in bad faith when refusing to lift the cloud on Dalton M's title before suit but this bad faith inevitably followed from the original bad faith. The evidence of bad faith after contact from Mark Faulkes is overwhelming, if not undisputed. A reviewing court can base its decision on findings of fact implied from other findings and the underlying facts. *Pistol Resources, LLC v. McNeely*, 312 Or. App. 627, 629, 496 P.3d 28 (2021). We may review the record for competent evidence to support presumed findings. *Padron v. Bentley Marine Group, LLC*, 262 N.C. App. 610, 822 S.E.2d 494, 498 (2018). If evidence supports an implied fact finding, we must uphold the trial court's judgment on any legal theory supported by the findings. *PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116, 133 (Tex. App. 2020).

55

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

*Issue 9: Whether the trial court committed error when awarding the amount of fees and costs?*

*Answer 9: We decline to address this issue, but remand for the superior court to determine a reasonable sum based on this court's opinion.*

In addition to contending that the trial court should not have awarded Dalton M any fees, U.S. Bank contends that the trial court should have reduced or struck some of the attorney fees that it awarded to Dalton M. We do not directly address this assignment of error. Although we hold that Dalton M is entitled to reasonable attorney fees because of the bank's bad faith conduct in refusing to remove the cloud, we do not necessarily direct an award to Dalton M of all of its fees incurred. We award those fees attendant to the bad faith, which includes the fees attendant to clearing title and fees incurred to establish the bad faith denial of the claim of U.S. Bank. We deny fees for pursuing an unjust enrichment claim and a Consumer Protection Act claim.

We recognize that Dalton M lost on its slander of title claim, but much of the evidence and advocacy related to the claim concerned establishing bad faith in rejecting a valid claim. We remand to the superior court to determine this amount of fees to award Dalton M. To the extent the work contributed to clearing title, the court should award fees for this work. To the extent Dalton M can show work on the slander of title cause of action assisted in showing prelitigation bad faith in denying a claim, the court should also award the fees incurred for this work. To the extent evidence showing bad faith conduct

56

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

in filing the trustee's deed overlaps with evidence showing bad faith after the recording

of the deed, the court should award fees for this work. Dalton M must act in good faith to

segregate work performed, for which it is entitled to recovery, from other work

performed. In the alternative, Dalton M must explain why it is unable to segregate some

of the work.

An award of attorney fees may be limited to fees attributable to successful claims

if the claims brought are unrelated and separable. *Brand v. Department of Labor &*

*Industries*, 139 Wn.2d 659, 672, 989 P.2d 1111 (1999). In contrast, when parties prevail

on any significant issue inseparable from issues on which the parties did not prevail, a

court may award attorney fees on all issues. *Brand v. Department of Labor & Industries*,

139 Wn.2d 659, 672 (1999).

*Brand v. Department of Labor and Industries* followed the teachings of the United

States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed.

2d 40 (1983). In *Hensley*, a civil rights case, the plaintiffs filed a complaint in which they

brought three claims for patients involuntarily confined in a state hospital. They

succeeded on one claim. The *Hensley* court emphasized that a court should look to the

degree of success of a party when determining how much to award in attorney fees and

also look to whether the party's work on unsuccessful claims contributed to the overall

result. The Supreme Court wrote:

57

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

> [T]he plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.

*Hensley v. Eckerhart*, 461 U.S. at 435.  Therefore, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonable expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. at 435.  The Court added:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Hensley v. Eckerhart*, 461 U.S. 424 at 435 (citations omitted).

We deem the superior court, who conducted the trial, lies in a better position than us to assess what fees should be recovered based on these principles.

*Issue 10: Whether this court should award Dalton M reasonable attorney fees incurred on appeal?*

*Answer 10: No.*

In the conclusion of its opening brief, Dalton M devotes one sentence to a request for attorney fees pursuant to RAP 18.1.  This request fails to comply with RAP 18.1(b),

58

No. 37448-3-III
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

which requires that a party "devote a section of its opening brief to the request for the

fees or expenses." Br. of Resp't at 49. Therefore, we deny Dalton M any fees on appeal.

CONCLUSION

We reverse the trial court's judgment in favor of Dalton M for slander of title. We

hold that Dalton M may recover reasonable attorney fees incurred for the bad faith

conduct of U.S. Bank in failing to recognize the valid claim of Dalton M and failure to

clear title. We remand to the superior court to determine a reasonable amount incurred

by Dalton M as a result of this bad faith. We deny Dalton M reasonable attorney fees

incurred on appeal.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

59

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37448-3-III

FEARING, J. (Concurring opinion)—The bad faith conduct of U.S. Bank falls into the category of what pundits Joanne Doroshow, Steven DuPuis, Ben Pickup, and Libby Mitchell all label as the action of a company "too big to care." When a customer attempts to solve a dispute with a financial institution, insurance company, cable television company, rental car company, airline, manufacturer, cell phone company, managed care entity, or other megacorporation, the customer encounters headwinds, if not insurmountable obstacles.

The headwinds blow even before or at the time of purchasing a product or a service. After being quoted a price by a salesperson for a new cellphone, the customer walks to the register and then learns the cellphone company charges initiation fees. A satellite dish company advertises a price, but then the company adds other charges to the monthly bill never disclosed and insists that the customer sign an agreement that includes those charges. To schedule an appointment with a physician through a managed care entity, the patient must spend one hour and one half on a telephone hold to speak with a nurse who may or may not clear an appointment. A customer reserves a rental car

No. 3748-3-III — (concurrence)
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

through the Internet only to learn at the rental car local counter that the company will charge a higher rental fee than advertised on the Internet. The agent at the counter explains that the local rental car company is a franchisee of the worldwide company, and the local company is not responsible for the Internet website.

If the customer wishes to resolve a dispute regarding a product or service, the "too big to care" company erects other obstacles after the transaction. Assuming any local representative of the company can be found, the representative lacks any authority to resolve the dispute. Dalton M could not converse with any local agent of U.S. Bank, Northwest Trustee Services, or Ocwen Loan Servicing. Instead, the customer must employ phone calls to a distant location, if not another continent. An automated phone system will place the consumer on hold for interminable minutes. When an agent finally answers the phone, that agent either gives an ersatz name or gives only a first name. Company policy prohibits the employee from providing a full name, address, and direct phone number. With this ploy, the anonymous employee becomes absorbed into a crowd and assumes no responsibility to behave. The agent sympathetically listens to the customer's complaint, promises to investigate the problem, and pledges to contact the customer soon. The agent never responds. The customer calls the company again. After being on hold for interminable minutes, the customer is transferred from office to office. When an agent finally listens, the customer asks to speak with the first agent and gives

2

No. 3748-3-III — (concurrence)
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

that first agent's first name. The answerer responds that he knows no one by that name working for the company. The customer tells the second agent that the first agent took notes of the earlier conversation. The second agent states he cannot locate any notes of any earlier contact.

The second agent forwards the customer to a third agent of the "too big to care" company. The customer remains on hold again for interminable minutes. Then the customer discloses her complaint to the third agent as he had with the first agent. The third agent promises to work to solve the problem and contact the customer soon. The customer never hears again from the third agent. After conversing with agents of Northwest Trustee Services for one month, the company directed Dalton M to contact Robinson Tait.

The customer begins to write letters to the megacorporation. The "too big to care" company ignores the initial letters. After several letters, an agent may call or e-mail the customer. As before, this agent lacks authority to solve any problem. The company only permits the customer to speak with an agent who lacks authority to solve the problem. This practice or policy shields any responsible person from contact with the complaining customer. The problem remains unsolved. U.S. Bank refused to deal directly with Dalton M, but instead insisted that Dalton M continue to communicate with Robinson Tait, who lacked authority to resolve the dispute. Robinson Tait assigned three different

3

No. 3748-3-III — (concurrence)
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

attorneys to assist Dalton M, none of whom solved any problem, but instead gave Dalton M false promises.

The "too big to care" company shuffles responsibility from employee to employee without any concern for the wellbeing of the customer. The company and its agents know that it can afford to be sued and that most consumers lack the will and the resources to hire an attorney. According to Joanne Doroshow, the large company violates contracts with consumers and laws intended to protect consumers with relative impunity, or at least without suffering the kind of punishment that would actually hurt. Endless stories abound of consumers feeling helpless yet continuing to do business with the same company because of the lack of choice of conducting business with a company that cares.

If the customer sues the "too big to care" company, the company blames the problem or the lack of a resolution of the problem on the customer. If the company settles with the consumer after the filing of a lawsuit, the company will insist on the consumer signing a nondisclosure and nondisparagement agreement despite such a provision never being part of settlement negotiations. The company will refuse to pay the consumer's attorney fees.

Other more pressing problems plague the American economy than the conduct of the "too big to care" company. Still, the "too big to care" phenomenon harms the economy by wasting hours of consumers' productive time. The phenomenon

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 3748-3-III — (concurrence)
*Dalton M, LLC v. North Cascade Trustee Services, Inc.*

dehumanizes us.  The phenomenon destroys trust in American business.  According to a 1998 study by Paul Zak and Stephen Knack, this lack of trust impacts the American economy.  If American consumers held the same trust as consumers in other developed countries, our GDP would be $16,000 per capita higher.  Paul J. Zak & Stephen Knack, *Trust and Growth* (Sept. 18, 1998), https://ssrn.com/abstract=136961.  The figure of $16,000 seems unusually high, but even a percentage of this amount is too high to squander.

More pressing problems plague the American judicial system.  Still, the "too big to care" phenomenon troubles the judicial system by leading to lawsuits when the rare customer has the stamina and resources to right a wrong.  Courts can play a role in limiting this bane by imposing fees and costs of litigation on the "too big to care" company when it fails to timely and fairly resolve a legitimate claim.

_Fearing, J._____
Fearing, J.

5